REBECCA C. WINSTON et al. *vs.* OTLEY and HUMPHRIES.

This court has heretofore decided, that a total omission to give the notice re-
quired by law, or giving it in a mode entirely different from that prescribed
by law, will not affect the title of a *bonâ fide* purchaser of land under an
execution, who had no knowledge of the misconduct of the sheriff. *Held,*
that doctrine cannot be applied to this case, because O. and H. were the
owners of the execution and judgment, by virtue of which the sale was made,
and they cannot defend as *bonâ fide* purchasers, but must be charged with
notice.

The facts stated in the bill entitled the complainants to relief. *Held,* that the
demurrer should have been overruled.

IN error from the northern district chancery court at Colum-
bus; Hon. Henry Dickinson, vice-chancellor.

On the 15th October, 1847, a judgment was entered up in
favor of T. P. Miller & Co. against Thomas Winston and Green
Hill, as partners, &c., for $3,373.46, with a stay of execution for
six months. The debt on which said judgment was founded
grew out of the partnership business of Winston & Hill.

On March 3, 1848, Thomas Winston sold out to Hill, the
latter assuming the payment of all the debts, and taking all the
effects of the partnership. Hill executed to Winston a bond to
secure Winston from said partnership debts. The partnership
was then dissolved, and Winston quit and left Hill in posses-
sion of all. Defendants knew of the dissolution.

On the 6th March, 1848, Thomas Winston sold and con-
veyed to W. B. Winston the land in dispute. W. B. Winston,
sometime in 1850, died, and by will left the land to Rebecca
Winston.

At the time of the sale to W. B. Winston, Hill possessed
ample means to pay said judgment, and, among other property,
owned negroes worth $3,500, and a large stock of drugs, medi-
cines, &c. &c. After this, Hill sold said drugs and medicines
for something over $3,000, for notes due at subsequent dates.
The purchaser from Hill took possession and continued the
business. About this time the stay of execution expired, and

T. P. Miller & Co., on the 10th May, 1848, issued execution and caused a levy to be made on property, among which were the said negroes and the remnant of said drugs and medicines in the hands of Hill's vendee.

Humphries and Otley professed to have each respectively purchased said negroes of Hill, and each alleged that he had Hill's bill of sale for them. The consideration in Humphries' bill of sale being $700, and in Otley's $400. Both sums together were vastly below the value of the negroes. Said bills of sale were mortgages, in fact, and a security for the payment of a balance due to said Humphries and Otley, respectively, on settlement of long money transactions, wherein five per cent. per month was exacted of Hill. On a fair computation at legal interest, nothing would be due to Humphries or to Otley. The said $700 and the said $400 were all usury. That each held a bill of sale was known to no one but Hill. Humphries and Otley, after said levy, purchased T. P. Miller & Co.'s judgment, in order to get control of it, and to release the negroes. They gave for the judgment their own promissory note for its amount due at a subsequent day. Humphries and Otley then procured from Hill an order to the sheriff to deliver to them the said negroes, and caused the negroes to be released from the levy, and under Hill's order to be delivered to them; and they forthwith removed the negroes out of the State.

Humphries, soon after the levy, and before the release of the negroes, procured from Hill notes of Hill's vendee given for said goods and merchandise to the amount of $1,000 or $1,100, as security also for the same debt which said bill of sale was given to secure. All of which is charged to have been done collusively between said parties and Hill, to exempt said negroes, and to bring the rest of the property under the sheriff's hammer, that it might be purchased by defendants.

Afterwards, in the month of September, 1848, Otley and Humphries proceeded to cause the sheriff to sell, under said judgment, the land aforesaid, as the property of Thomas Winston. The sale was made without advertisement of the time and place, and, though worth $1,500 cash, was bid off by defendants for $50. Said defendants being the owners of the

judgment, paid nothing for said land, but simply receipted to the sheriff for so much money received on the execution.

All this transpired during the pendency of a writ of error to the high court of errors and appeals of Mississippi. The petition for a writ of error was filed 2d June, 1848, of which Humphries and Otley had knowledge before the sale of the land. The writ of error was successfully prosecuted, and the judgment of T. P. Miller & Co. was reversed at the January term, 1849, and the suit of *T. P. Miller & Co.* v. *Winston & Hill* was dismissed in the court below.

*R. Evans*, for appellants.

The right of complainants to a restitution of the possession and title of the land, is alone sufficient ground for aid in equity; and that they have this right, is clear from principle and authorities. The general rule, that a purchaser under a judgment which is reversed after the purchase, gets a good title, notwithstanding the reversal, is undoubtedly true, in all cases where the purchaser is a *bonâ fide* purchaser, who has parted with his money. It is equally well settled, that the defendant whose property is sold under a judgment which is afterwards reversed, is entitled to restitution. Tidd's Practice, 936, 937, 1137, 1138, (Tom. Christian's Tidd); *Madison's Executors* v. *Wallace's Executors*, 2 Dana, 61. The question, then, is, To restitution of what is the defendant entitled? In answer, a distinction must be drawn between those cases where a third party, a stranger to the execution, is the purchaser, and parts with his money to the sheriff, and those cases where no money is paid, when the owner of the execution is the purchaser, and simply indorses a credit for his bid.

In the first class of cases, the law will not permit the stranger to lose the property which he has in good faith paid his money for, but compels the execution creditor to make restitution of the money; the owner of the execution is not permitted to retain any thing; he is compelled to make restitution of all. The law will not suffer the stranger to be interfered with, because he has parted with his money, and cannot be put *in*

*statu quo;* the owner of the execution can be put *in statu quo;* and hence, as between the owner of the execution and the defendant, the law puts both *in statu quo* by a restitution of the property.

A reversal of the judgment remits the plaintiff to his original cause of action, free from all credits. For instance, in the present case, Humphries and Otley, the owners of the judgment, are by the reversal of the judgment remitted to their action on the promissory note, free from the credits indorsed on the execution. *Close* v. *Stuart,* 4 Wend. 95; *Smock* v. *Graham,* 1 Blackf. 314; 8 Wend. 10.

2. The second cause of demurrer assigned, is based on false premises. It assumes, that the bill admits that Winston & Hill are liable for the judgment, whereas the bill shows that the judgment has been reversed. It assumes, that there was an agreement by Winston & Hill that judgment with a stay of execution might be entered up, whereas the bill shows no such agreement. The bill shows that Humphries and Otley are remitted to their original cause of action, which may be due and honest, and yet they not entitled to a judgment upon it; it may be on the trial counterbalanced by an offset, or it may be shown to have been released or settled by accord and satisfaction, and in divers other ways. But the bill says nothing as to the debts being still due and unpaid; nor does it say any thing about defendants as honest creditors; and yet, if the bill had admitted all this, such an admission would not justify defendants, Humphries and Otley, in taking away from us our land by virtue of the said promissory note, on which the judgment, before its reversal, was based. A promissory note cannot justify the seizure of the debtor's land.

But, as conclusive against this ground of demurrer, the bill shows that defendants, Humphries and Otley, fraudulently exempted Hill's negroes from the judgment; that the exemption was effected by a combination between Humphries and Otley and Hill, in order that the land might be brought under the sheriff's hammer and purchased by Humphries and Otley; that the land was sold without advertisement of the time and place,

and bid off by them for $50, when it was worth $1,500; and all this in the face of Hill's obligation to pay the debts of Winston & Hill, and to save Winston harmless, &c.

3. If a court of equity has power to compel a restitution of land unrighteously obtained under cover of legal process, or to vacate a sale for grossly inadequate price, made by the sheriff without advertisement, and procured by the purchasers, who, for the sake of purchasing, in collusion with Hill released from the levy and removed out of the State negroes which ought to have been sold before Winston's land was touched, then is the third ground assigned for demurrer swept away.

4. Complainants do not profess to be judgment creditors, nor even simple contract creditors of Hill, or of Winston & Hill. We do not need to be judgment creditors of any one, in order that we may ask aid of equity to restore to us that which is our own, and out of which we are kept upon the unconscionable ground and in the inequitable manner above set forth.

5. The bill shows that the judgment has been reversed, and that is enough. It matters not whether the judgment was void or voidable, erroneous or not erroneous, it has been reversed, and the legal and equitable consequences of a reversal must follow. This court cannot decide whether or not the judgment of the high court is right or wrong. Said court has pronounced judgment, and that is conclusive on this court. The demurrer seems to be framed out and out without regard to the nature and contents of the bill of complaint. The bill shows that the petition for the writ of error was filed June 2, 1848, three months before the sale of the land.

*James T. Harrison*, for appellees.

The demurrer to the bill was sustained in the court below. The special causes of demurrer will be found in the record. I do not propose to argue them, but have filed with the papers the rough notes of the argument of Mr. Harris in the court below. Indeed, the learned counsel for the complainants now admits in his brief on file, " that the object of the bill is restitution of the land; the reasons set forth in the bill all look to this one end. One decree will cover all the ground and the reasons

set forth; the bill cannot, therefore, be multifarious. Thomas Winston is a necessary party, and must be either a complainant or defendant, otherwise the bill would be faulty; he is the defendant in the execution whose land was sold, and which is now to be restored, and Rebecca Winston is a necessary party, being entitled to all the interest that is to be restored."

The writ of restitution is confined to courts of law, and it is awarded by the court which reverses the judgment. It is unknown to the chancery court. *Starke* v. *Lewis*, 1 Cushman, 151, 152. And in the present case the property is sought, by the process of restitution, to be "restored" to the widow and devisee of a purchaser from the defendant to the execution to a third person in no way connected with the proceedings at law. *Bank of United States* v. *Bank of Washington*, 6 Pet. 8; 6 Cow. 299; 1 Tucker's Com. 362, and cases cited; 4 Rand. R. 427; 1 Wash. R. 313; *Matthew Manning's case*, Co. 96; 1 Burr. 34; 1 Harr. & Johns. 405; 1 Murphy, 272; 4 Dana, 98; 7 Ala. R. 484; 13 S. & M. 183, 186; 8 Ib. 206, 209.

Mr. Justice YERGER delivered the opinion of the court.

This case is brought by writ of error from the district chancery court at Columbus.

The bill, which was filed by the plaintiffs in error, was demurred to, and the demurrer was sustained. The substantial allegations to which we deem it necessary to advert, are these : " In October, 1847, T. P. Miller & Co. obtained a judgment in the circuit court of Lowndes county against the complainant, Thomas B. Winston and others, which judgment they afterwards transferred to the defendants, Otley and Humphries. After various proceedings, Otley and Humphries caused an execution to be issued upon this judgment and levied upon a tract of land, which belonged to Thomas B. Winston when the judgment was rendered. This land was sold by their direction and was purchased by them for the sum of fifty dollars, which was entered as a credit upon the execution. This sale was made without advertisement of time and place, and the land, it is alleged, was worth at least fifteen hundred dollars in cash. The sale was also made during the pendency of a writ of error

sued out to the original judgment, which original judgment by the high court was afterwards reversed, and the cause remanded. The bill also states, that some time after the rendition of the original judgment, Thomas B. Winston sold the tract of land to his brother William B. Winston, making him a deed thereto with covenants to warrant and defend the title to the same; that William B. Winston died, making his last will and testament, by which he devised the land to the complainant Rebecca C. who was the owner of it, when it was sold by virtue of the execution. The bill prays, that the sale by virtue of the execution to Otley and Humphreys be set aside, and the deed to them cancelled.

We do not think the demurrer to the bill should have been sustained.

In the case of *The City of Natchez* v. *Minor,* 10 S. & M. 246, it was decided, that a total omission to give the notice required by law or giving it in a mode entirely different from that prescribed by law, will not affect the title of a *bonâ fide* purchaser of land under the execution who had no knowledge of the misconduct of the sheriff. This doctrine cannot benefit these defendants, because being the owners of the judgment and execution by virtue of which the sale was made, they cannot defend as *bonâ fide* purchasers, and must be held to be charged and affected with notice of any irregularity committed by the sheriff in executing the process.

Again, they became the purchasers for $50 of a tract of land admitted to have been worth at least $1,500. It is not necessary for us to decide whether a sale under execution would be set aside for such gross inadequacy of price, independent of other circumstances; but it is certainly clear, that a court of equity would be very inefficient in protecting the rights of parties if there was any hesitancy in vacating a sale, where there existed such gross inadequacy of price, coupled with the additional facts, that there was no notice given of the time and place of sale, and that the owners of the execution were the purchasers of the property.

But it is said, the bill is multifarious, because brought in the name of Thomas B. Winston, the defendant in the execution,

and Rebecca C. Winston, who is the owner of the property sold by virtue of a title derived from Thomas B. We do not think this objection tenable. When Thomas B. Winston sold the land to William B. Winston, the judgment in favor of Miller & Co. was a lien upon it, and by the warranty contained in his deed, he was bound to defend the title of his vendee. As the sale under this execution, if permitted to stand, would deprive Mrs. Winston of the land, and compel her to resort for redress to her covenants against Thomas B. Winston, each have a joint interest in having the sale set aside, she to protect her right and title to the land, and he, in order that he may keep his covenant to defend the title.

We have not thought it necessary to notice all the causes of demurrer assigned by the defendants. In our opinion, the facts stated in the bill entitle the complainants to relief. The decree of the vice-chancellor must, therefore, be reversed, the demurrer overruled, and the cause remanded, with leave to the defendants to answer within sixty days after a certificate of the judgment in this court shall be filed in the court below.