Ayres v. Duprey.

Reversed and remanded.

DAVID AYRES v. L. W. DUPREY.

An official return made by a sheriff is the primary and best evidence of his action; and, as a general rul·, in the absence of fraud or mistake, it cannot be varied or contradicted by the parol testimony of the sheriff.

When it was apparent that the belief of a witness introduced to impeach the testimony of another witness, was based upon his individual opinion and feelings, and not upon his knowledge of the reputation for veracity of the assailed witness in the community of his residence, the testimony of the impeaching witness was properly excluded.

The testimony of a witness cannot be contradicted by proving that he had made declarations and statements inconsistent with his testimony, unless a predicate had been laid by first inquiring of him with regard to the alleged declarations, and thus affording him an opportunity of meeting or explaining them.

The ruling in Boon v. Wethered, (23 Texas Rep., 675,) that in the impeachment of a witness, the inquiry should not extend to his general moral character, but must be confined to his general character for truth, cited and approved.

The decision of the court below upon an application for a continuance, will not be disturbed by this court, unless injury or injustice has plainly resulted from it to the party complaining of it.

A covenantor in a warranty which did not run with the land is a competent witness, without a release, in favor of a purchaser from his vendee against an adverse claimant. If the warranty was such as did run with the land, or was equitably available by the purchaser, a proper release would qualify the covenantor as a witness in his behalf.

The appraisement law (Hart. Digest, arts. 1276, 1340,) requires, in plain terms, that the appraisement should be made *on the day of sale;* and it is not optional with judicial or ministerial officers to disregard its directions in this respect.

38*

Ayres  v.  Duprey.

Where, under an execution to which the appraisement law was applicable, the sheriff, previous to the day of sale, appraised the land levied on, but no appraisement was made on the sale day, his sale was an irregular or erroneous execution of the process which constituted his authority to sell. The sale was not *void;* but it was such an irregular sale as might have been avoided.

See this case as to the parties by and against whom, and in what manner, such an irregular sale could be avoided.

It seems that a sheriff's deed cannot, on account of irregularity in his sale, be invalidated collaterally in another suit, even though the plaintiff in the execution, under which the sale was made, be a party to such suit.

If the defendant in an action of trespass to try title have an equitable right as against the plaintiff, to avoid a sheriff's deed for irregularities in the sale, he cannot obtain such relief under his plea of " not guilty;" but must invoke it by proper pleadings, setting forth the facts specially, and impleading all proper parties. The plea of " not guilty " to a suit of trespass to try title, admits such defences only as are applicable to that form of action.

See this case for a consideration of the general principles applicable to irregularities in sales by officers under final process, and for a review of authorities pertinent thereto.

Although, as a general rule, a judgment and execution attach only to such interest as the defendant in execution has in the property ; yet, by force of the registration laws of this State, it seems that a *bona fide* purchaser at sheriff's sale, without notice of an unrecorded conveyance made by the defendant in execution before the rendition of the judgment, takes the property as against the unrecorded deed

But the registration acts are designed for the protection of *bona fide* purchasers only, and the courts will not permit them to be perverted into the means of perpetrating frauds. A subsequent purchaser, having notice of a prior unrecorded deed, can claim no benefit from the omission to record it.

To constitute a person a *bona fide* purchaser within the meaning of the statute, he must, upon the faith of the purchase of the property, have advanced for it a valuable consideration. If he was a creditor antecedent to his purchase, and paid for the purchase by a credit on his demand, then, inasmuch as he has parted with no consideration on the faith of the purchase, he is not a *bona fide* purchaser within the meaning of the statute.

See this case as to what class of *creditors* the statute embraces within its protection against unrecorded deeds ; and how their rights, also, are affected by notice. General creditors, it seems, are not within the pale of the statute ; but only such creditors as have acquired some character of lien on the property, for the protection of which the aid of the statute is invoked.

APPEAL from Lavaca. Tried below before the Hon. Fielding Jones.

Ayres v. Duprey.

Trespass to try title, brought by the appellant, Ayres, against Duprey, the appellee, to recover a half league and labor of land in Lavaca county. The petition was filed June 26, 1858, and, besides the usual allegations of a suit of trespass to try title, contained an averment that the defendant set up a pretended claim to the land, thereby casting a cloud upon the plaintiff's title, to his damage, &c. Besides the ordinary judgment, the prayer also asked a decree removing the clouds, &c.

The defendant demurred, and answered with a general denial and a plea of "not guilty." By an amended answer, he alleged title in himself, which he deraigned, first, by patent to J. Benton Johnson, of date June 30, 1845; deed to Peter W. Gray, dated July 24, 1845, which contained a general warranty of title "to said Gray, his heirs, &c.;" and, third, quit claim deed from Gray to defendant, for a valuable consideration, dated March 8, 1850. Defendant prayed to be quieted in his possession as against the plaintiff, and for general relief.

The plaintiff also amended, alleging that he purchased the land at sheriff's sale on the 7th of September, 1847, as evidenced by deed on file; that he had the said deed duly recorded: that at the time of his said purchase he had no knowledge of the defendant's claim or title; that if the defendant has any claim or title, the same was concealed from the plaintiff, and the plaintiff had no knowledge of it until the 12th of November, 1855, when the defendant had his pretended deed recorded in Lavaca county; and plaintiff alleges that if the defendant purchased said land, he had forfeited all claims to it by his laches in not having the deed recorded as the law requires.

The case came to trial at the Spring Term, 1860. After reading in evidence the patent to J. Benton Johnson, the plaintiff introduced his deed from N. J. Ryan, sheriff of Lavaca county, dated May 27, 1848, and filed for record September 28, 1848. The facts relative to the sale, out of which the deed originated, were as follows: On the 5th of November, 1839, Timothy Pillsbury brought suit against J. Benton Johnson and H. N. Cleveland on their joint note for $797, and soon thereafter recovered judgment thereon. On the 5th of August, 1840, execution issued

and was levied on land of the defendant Johnson. On the 3d of November, 1840, the land was sold and J. Benton Johnson became the purchaser, who executed his " twelve months' bond " for the purchase money, with the appellant Ayres and N. Brookshire as his sureties. This bond became forfeited for non-payment, and in 1846 an *alias pluries* execution issued from it, and was levied upon land of Johnson. This land failing to bring the full amount of the execution, another writ, with appraisement, issued on the 10th of July, 1847, and was levied upon the half league and labor in controversy, as the property of J. Benton Johnson. At the sale of this latter tract, on the 7th of September, 1847, the appellant, David Ayres, became the purchaser for the sum of $386 92.

The appraisement of the land set out in the statement of facts, is as follows : " We, the undersigned appraisers, value the above named tract of land at three hundred and 98 dollars 52, or eighteen cents per acre. In witness whereof, we hereunto subscribed our names and affixed seals, this 19th day of July, 1847. (Here appear the names and seals of the appraisers, followed by the sheriff's certificate, viz :) ' Sworn to and subscribed before me day and date above written.          " ' N. J. RYAN,
                                      " ' Sheriff Lavaca county.' "

The plaintiff offered the deposition of N. J.Ryan, " to prove that the land was legally sold, and that the appraisement was made regular, and to take effect on the day of sale." The defendant objected, for the reason that the appraisement was in writing, and had been filed in the case ; and the court, sustaining the objection, excluded the deposition ; to which the plaintiff excepted.

The plaintiff also read in evidence the record of the District Court of Austin county, in the case of Pillsbury against Johnson and others, the executions, returns, &c.

The defendant introduced the patent to J. Benton Johnson, and then read the deed from Johnson to P. W. Gray, of July 24, 1845, which expressed a consideration of one thousand dollars. This deed was acknowledged by Johnson on the day of its date, but was not filed for record until November 12, 1855. It contained the following warranty : " And for the consideration afore-

said, I hereby warrant the title to said tract of land to him, the said Gray, his heirs, &c., against the lawful claim of all persons claiming, or to claim the same." The defendant also read the quit claim deed to himself from P. W. Gray, of date March 8, 1850, acknowledged June 4, 1850, and filed for record November 12, 1855.

The defendant offered the deposition of J. Benton Johnson, to which was appended, by the witness, a release executed to him by the defendant, acquitting the witness of all liability on his covenant of warranty in the deed to Gray. This release was dated April 10, 1859, and was acknowledged by the defendant Duprey on the 4th of July, 1859, before the presiding judge of the County Court of Shelby county, State of Kentucky, who certified the acknowledgment under his hand. The certificate of the clerk of the same court, under the seal of the court, was appended, certifying to the official character of the judge. The plaintiff objected to the admission of Johnson's deposition, because, first, the witness was interested in the recovery of the defendant; second and third, that, inasmuch as the defendant claimed under a quit claim deed only, he could not release the witness; fourth, that the certificate of the judge to the acknowledgment of the release, was without a seal, and it did not appear that the judge had no seal.

The court overruled the plaintiff's objections and admitted the deposition, the substance of which was to the effect that Ayres, the plaintiff, owned and controlled, or claimed to own and control, the Pillsbury judgment under which the land was sold; that for some time before the sale, he knew of the unrecorded conveyance to Gray; that about the year 1855, the plaintiff and witness had a conversation at Galveston about the land, with regard to which witness had previously told plaintiff that he, the plaintiff, could not hold it, and that it had been 'fully satisfied between himself and Cleveland; which the plaintiff admitted, but said that witness need not say anything about it, as witness had sold the land, and he, the plaintiff, could make a speculation if witness would help him, and that he, plaintiff, would give witness one-third or half of the land to keep silence with regard to the matter.

The defendant read the deposition of P. W. Gray, who testified

that in 1845 he received a deed to the land in controversy from J. Benton Johnson, in settlement of a claim due from him to Duprey, the defendant; and that in 1850 witness conveyed the land to Duprey. That afterwards, in 1852 or in 1853, witness heard that the plaintiff had a claim on the land by a deed made since, but recorded before the deed of Johnson to witness; and witness made it his business to see plaintiff about it for Duprey. The plaintiff told witness his claim was a sheriff's deed, made under a judgment and execution in Austin county District Court a good many years before. Witness remarked that it was a very old claim and doubted its validity, and plaintiff said that the judgment was against Johnson and himself as Johnson's security, and that he had the execution issued after finding that the land had been patented to Johnson, and had the land sold. That witness made some remark or inquiry about plaintiff's authority to control the execution to which he was a defendant, when plaintiff replied that he, as surety for Johnson, had settled the judgment, and he had the execution issued for his own benefit.

The plaintiff proposed to read the deposition of F. H. Ayers, and also offered A. H. Phillips as a witness; but the evidence was objected to and excluded upon grounds sufficiently indicated in the opinion. The plaintiff excepted.

Verdict and judgment for the defendant, new trial refused, and plaintiff appealed.

*R. M. Tevis* and *B. F. Fly*, for the appellant.

*J. T. Harcourt*, for the appellee.

Moore, J.—No injury resulted to Ayres from the exclusion from the jury of the deposition of Ryan, the former sheriff of Lavaca county. It was intended to show by his testimony that the land in controversy had been appraised as required by law, before it was sold by him under the judgment and execution against Johnson, through which Ayres claims title. The return of the sheriff and the appraisement of the land, which he caused to be made, were before the court, and unquestionably are the pri-

mary and best evidence of his official action.  As a general rule, and in the absence of fraud or mistake, it certainly cannot be maintained that the official return of the sheriff can be varied or contradicted by his parol testimony.  But an inspection of his deposition, which was excluded, and his affidavit attached to the motion for a new trial, makes it quite manifest that his testimony would have added no strength to the case.  It is very obvious that the appraisement to which he refers, is the same which was returned with the execution, and which was before the court.  If, however, there was really another appraisement, it was altogether immaterial, since from his testimony there was the same defect in it which was charged upon the one in evidence before the jury.

The objections to the deposition of F. H. Ayres were also properly sustained.  This deposition was offered for the purpose of contradicting the testimony and impeaching the character of Johnson, who testified in the case on behalf of the defendant, Duprey.  But we are clearly of the opinion that an inspection of the deposition shows that the witness Ayres did not show himself qualified to speak with reference to the character of Johnson for truth and veracity.  His belief seems to be based upon his individual opinions and feelings, and not upon his knowledge of Johnson's reputation in the community in which he lived, as to which this witness appears to be wholly uninformed.  Nor could Johnson's testimony be contradicted by proof of declarations and statements by him, inconsistent with his present testimony, without laying a predicate for so doing by first inquiring of him as to those alleged statements, and thus affording him an opportunity of meeting or explaining them.

Nor did the court err in refusing to receive the testimony of Phillips, also offered for the purpose of impeaching the character of the witness, Johnson.  He says that he was acquainted with Johnson's general character in the community in which he lived a number of years previously, and from that general character he would not believe him on oath.  It is unnecessary at present to inquire whether the lapse of time since the witness had known any thing about Johnson's character, would not alone have disqualified him from testifying.  The rule governing the court in

receiving testimony to impeach the character of a witness, was most elaborately examined by this court in the case of Boon v. Wethered, 23 Tex. Rep., 675, and upon a thorough examination of the authorities, it was held in the impeachment of a witness the inquiry should be confined to his general character for truth, and should not extend to his general moral character.

No injury is shown to have been done by the refusal of the court to continue or postpone the cause on account of the absence of two of the plaintiff Ayres' counsel. Matters of this kind are addressed to the discretion of the court trying the case, and its decision will not be interfered with, unless injury or injustice to the parties have plainly resulted from it.

The objection of Ayres to the deposition of Johnson was properly overruled. The release of the witness was authenticated in strict accordance with the recognized construction of the statute and the former decisions of this court. If, however, as Ayres' counsel insist, the covenant of warranty in Johnson's deed to Gray does not run with the land, and pass by the quit claim deed of Gray to the defendant, Duprey, Johnson undeniably had no interest in the result of this suit. The judgment in it worked no injury to Gray. It gave Duprey no right of action against him. And in a suit between Gray and Johnson it could not be used as evidence of a breach of covenant, if such a suit could possibly be sustained by the former, after he had parted with his title to the land by a quit claim deed, and when, consequently, he could not be injured by the subsequent failure of the title. But if the covenant of warranty ran with the land and passed by the quit claim deed of Gray to Duprey, or if the latter had in equity the right to enforce the covenant in the deed to Gray, because he was acting as his agent, and the conveyance was really taken in trust for his benefit, the release was effectual and restored the competency of the witness.

At the request of the defendant, Duprey, the jury were instructed, unless the land was appraised on the day of sale, its sale by the sheriff was a nullity, and the plaintiff, Ayres, acquired no title by his purchase under the execution sale. Whatever may have been the result of the case upon the other issues in it, this

instruction necessarily precluded the jury from returning a verdict in favor of Ayres, and unless it can be sustained, the judgment must unquestionably be reversed. An appraisement before a sale under execution, was evidently required for the purpose of protecting defendants in execution against an undue and ruinous sacrifice of their property. It would seem that the true value of the property, if real estate, might be more fairly ascertained by appraisers appointed before the day of sale, and who might thus have an opportunity of making a personal examination of the property, than by the appointment of appraisers on the day of sale, when, it is not unreasonable to suppose, they would often have no knowledge of its value, and would be forced to act upon unsatisfactory and doubtful information. The law, however, in plain terms, requires the appraisement to be proceeded with on the day of sale. It gives the defendant in execution until that time, to appear and exercise his privilege of selecting one of the appraisers. It may also be said to be the duty of the parties to the execution, to bring with them to the place of sale competent appraisers, and if they fail in doing so, they justly incur the injury resulting from their neglect. At all events the law is plain and unequivocal in its terms, and it is not for judicial or ministerial officers to disregard it. The failure to appraise the land upon the day of sale, was, in our opinion, a departure from the provisions of the statute, which was not obviated by the previous appraisement; and the sale consequently must be regarded as an irregular or erroneous execution of the process under which the sheriff was acting. The question still recurs, however, as to the effect which such irregularity will have upon the title under the sheriff's sale.

If the process under which the sheriff acts, is absolutely void, or if he has no authority to make the sale, his act in doing so is a nullity, and the purchaser acquires no title. "But there is," say the court in Sydnor v. Roberts, (13 Tex., 598,) "a marked difference between that which confers the power to do a certain act, and the rules which direct and regulate the mode of its execution. If the former be wanting, the act done is a nullity, and is to be taken as if nothing had been done; but if the latter be not strictly pursued, the acts done will not necessarily be void; or if void as to

some persons and purposes, they will not necessarily be so as to all persons and for all purposes; but only as to the person who may have the right to avoid them, and will exercise that right in the proper manner and in proper time." In other words, if the sheriff is wanting in power to make the sale, the title claimed under it is void, but if there has been a defective or erroneous exercise of the power conferred upon him, the title of the purchaser under some circumstances may be avoided in the proper time and manner as to some persons, and for some purposes. For though the court speak of the title as void, as to some persons, and for some purposes, it is evident the word void is here used by the court, as is frequently the case, in its relative and not in its absolute sense. Did the power of the sheriff to sell the land of the defendant in execution, depend upon the validity or regularity of the appraisement, or indeed upon the fact of there being any appraisement at all? We think not. We can see no reason for giving more potency to this provision of the statute than to its other requirements pointing out and directing the sheriff in the mode of executing the process, some of which were, like it, manifestly designed to guard the debtor against the fraudulent disposition of his property under color of legal process, or its undue sacrifice. The omission by the sheriff to give notice of the levy and sale, may be much more detrimental to the interest of the defendant in execution, than the failure to make an appraisement; yet it is most conclusively settled, such an omission does not make the sale void, but only voidable as to such parties as can take advantage of this defect, and this they must do in the manner which will be hereafter indicated. The Supreme Court of Georgia in the case of Brooks v. Rooney, (11 Ga., 423,) says, "The purchase depends upon the judgment, the levy and the deed, and all other questions are between the parties to the judgment and the officer." Again, "We believe this to be sound doctrine, and that although the failure in the performance of any part of the sheriff's duty, might subject him to an action in which he would be compelled to indemnify the owner of the land which might be irregularly sold, or the creditor to the extent of the injury received by such sale, yet it would not destroy the title of the purchaser who has a right to

Ayres v. Duprey.

presume that a public officer, known to possess the power to sell, has taken every previous step required of him by the law under which he sells." (See also Sullivan v. Hearnden, 11 Ga., 294; Cooper v. Harter, 1 Cart., 427; Clark v. Watson, 2 Cart., 399.) As to some parties, however, such irregular sales may be avoided; and of these unquestionably are the plaintiff in execution and such as purchase with notice of the defect in the sale. Thus, in Trotter v. Nelson, (1 Swan., 7,) it is said, "But it has been held in such case, the plaintiff in the erroneous and voidable execution, cannot be considered a *bona fide* purchaser; because, having actual or constructive notice of the error in the execution, it was a wrongful act in him to enforce it upon the property of the defendant. And as he can not be permitted to take advantage of his own wrong, his title to the property so acquired, will be avoided at the instance of the defendant." (Winston v. Otley, 25 Miss., 451.)

Such irregular execution of process, may be set aside by motion in the court from which it issued; or, in some cases, on an appeal to the equity powers of the court in a proceeding directly for this purpose, when with all the parties before the court, it can make its decree so as to relieve the one without detriment to the other. (Winston v. Otley, *supra*.) It seems, however, to be abundantly settled, that the question of irregularity or error in the execution, or the proceeding under it by the sheriff, can never be discussed collaterally in another suit. It can not be made a question, it has been said, in an action in ejectment. When a party in a collateral action claims title under a sheriff's deed, the court can not look into alleged irregularities in the process or proceeding of the sheriff. Nor could it in such a case make a decree avoiding the sale, and at the same time protect the interest of all parties, whose interest would be thereby affected. (Jackson v. Robins, 16 John., 537; Thompson v. Phillips, 1 Bald., C. C., 246; Surggart v. Harber, 4 Scam., 364; Pollard v. Cocke, 19 Ala., 188.)

The fact of the plaintiff in execution being one of the parties to the collateral suit, does not vary the rule. In Spofford v. Beach, (2 Douglass, 150,) it is said, that "the non-compliance by the sheriff with the requirements of the statute in regard to levy, advertisement and sale of real estate, is mere irregularity; and such

irregularity must be complained of in due time, by motion, or they will be waived." In Doe v. Harter, which was an action of eject-ment, one of the parties claimed through an execution issued on a dormant judgment. Smith, J., as the organ of the court, says : " We have not been referred to any case, nor have we been able to find one, where an irregularity of this kind, if it can properly be called an irregularity, has been held to invalidate the sale to a purchaser, with notice. On the contrary, there are numerous cases in which the general principle is recognized, that such an irregu-larity cannot be objected to in a collateral suit, and in some of them the question arose with reference to purchasers with notice." (2 Cart., 252, and cases cited; also Starke v. Gildart, 4 How., Miss., 267; Lee v. Crossna, 6 Humph., 281; Pollard v. Cooke, 19 Ala., 188.)

As the defendant, Duprey, was not a party to the record in the case from which the execution issued, under which Ayres claims; and as he acquired his title under a deed from the defendant in execution, of a prior date to the levy of the execution, and may have been ignorant of the sale of the land by the sheriff until it was too late to effectually protect himself by a motion to quash the execution, it may be said, and probably correctly, that he would therefore be authorized to invoke the equitable powers of the court. And since there are no distinctions with us in legal or equitable actions, the facts before the court showing sufficient ground for avoiding Ayres' title, the court below, it is insisted, should have so ruled, and its judgment may, upon this ground, be sustained. Without questioning that a defendant in an action of trespass to try title might claim from the court equitable re-lief of this character, we cannot admit that this can be done merely by the answer of "not guilty;" and it was not done by any special answer in this case. In actions of trespass to try title, the defendant, it is true, is not required to put in any other plea than that of not guilty. The obvious meaning of this is, however, that it is unnecessary for him to file any other plea, to authorize him to make any defence applicable to this action; but unquestionably, if he wishes to assert an independent, equitable right, not involved in the issue as to title directly in controversy,

Ayres v. Duprey.

he should present the facts by proper averments, and bring the necessary parties before the court to enable it to grant the relief to which he may be entitled.

It is suggested in the argument of counsel that Johnson having sold the land before the levy of the execution, although the purchaser failed to record the deed, he had no property in the land subject to the execution, and therefore no good could come from remanding the case. It is unquestionably a general rule that a judgment and execution attaches only to such interest as the defendant in execution may have in the property. But this general rule is made inapplicable to such cases as the present by a direct statutory enactment. Many cases may be easily found in which it is held that the lien of the judgment only attaches to the interest of the defendant at the time of its rendition, and when there had been a previous sale, as here, the title of the prior purchaser was declared to be unaffected by the subsequent sale under the judgment, although purchased by a stranger without notice. It is probable an examination of the statutes in the States where these decisions have been made will show that there is a material difference in the phraseology of their law and ours. In some of them, it is probable, the unrecorded deed is only avoided in favor of subsequent purchasers, and not, as with us, in favor of "all subsequent purchasers and creditors." These decisions seem to go upon the ground that since, as we have stated, the judgment lien could only attach to the then interest of the defendant in the property, and the purchaser could acquire by his purchase no greater interest than the defendant owned, or than the plaintiff was authorized to reach, he was consequently not within the spirit or intention of the law for the protection of subsequent purchasers against unrecorded deeds. Other courts, however, equally eminent for learning and ability, and, we think, upon better principle, hold purchasers at execution sales as fully within the protection of the registration laws as those who claim by direct and immediate conveyances. (Morrison v. French, 23 Penn. State R., [11 Harris,] 421 ; Scribner v. Lockwood, 9 Ham., 184 ; 2 Nott. & McC., 105 ; 10 Watts, 13 ; Byers v. Engles, 16 Ark., 543 ; Fordeck v. Barr., 3 Ohio State R., 471.)

In the case of Cooper v. Blakey, (10 Georgia, 253,) Lumpkin J., says: "It has not been denied in the argument but that a purchaser at a sale on execution, who has his deed first recorded, will gain the same preference over a prior unrecorded conveyance, as if he had bought directly from the debtor himself. For the effect of the sale by the law in this respect, is just the same as if made by the individual whose agent or trustee the officer becomes, to make the transfer. All the defendant's estate is sold. The purchaser takes his place. The mischief of an unrecorded deed is the same as to him as to a private purchaser. He examines the title, and from anything that appears, the defendant is the undisputed proprietor, while in fact there is an outstanding deed from him which would sweep off the property."

If, however, Ayers could only claim under the protection extended by the statute to subsequent purchasers, it could be successfully answered, that he is not such a purchaser as comes within the meaning of the statute. It was only intended for the protection of *bona fide* purchasers. Courts will not permit its use as a means of perpetrating frauds. If a party has notice of the unrecorded deed, he can claim no benefit from the failure to record it. This, however, is a mere question of fact with which, at present, we have nothing to do. But, evidently, only those who have paid a valuable consideration can claim to be *bona fide* purchasers. Does the plaintiff who purchases at his own execution sale, and credits his bid on the execution, stand in this category? It is held not. To constitute a person a *bona fide* purchaser, he must have advanced the consideration for the purchase. It will not constitute a *bona fide* purchaser, that the creditor bids off the premises, and applies the bid on his judgment. That is a precedent debt, and the consideration is not advanced upon the faith of the purchase. (Dickerson v. Tillinghast, 4 Paige, 215; Wright v. Douglass, 10 Barb. S. C., 97.)

But, as has been already said, creditors as well as purchasers are within the protection of our statute, and although Ayres may not be able to claim its protection in the latter character, he may probably be able to do so in the former. His right to do so depends upon the fact whether he had notice of the unrecorded deed

from the defendant in execution, prior to the time when he can claim his right became fixed, to call the statute to his aid for his security as a creditor. Actual notice or reasonable information of the unrecorded deed is certainly as effectual against creditors as subsequent purchasers, and if Ayres had notice of the deed from Johnson to Gray when he became a creditor, there is an end to his case. It may, however, be important to consider the effect of notice to him at a subsequent period. Does the statute extend to every class of creditors, or are such only as have acquired some character of lien, recognized by law as within its protection? There may be cases in our court, without the question having been specially adverted to, which have gone upon the doctrine of all creditors being within the law, though if so, we cannot at present call them to recollection. In Bennett v. Cocke, (15 Tex., 67,) there was a levy of execution upon personal property, and a claim interposed to try the right of property. The court guardedly say, "It is manifest that throughout the proceedings of the court below the defendant was regarded as a creditor in the sense of the statute." Again, "If the defendant be a creditor within the meaning and scope of this provision, (and as such he was considered, and the rights of the parties were adjudicated upon this hypothesis,) the only question," &c. But we presume there can be but little doubt either in principle or authority in saying, that only such creditors as have secured some character of lien upon the land before notice of the unrecorded deed are within the protection of the statute. The creditor cannot object to the sale of the property by the debtor, before his lien has attached to it. Such sale, if the title is registered, is conclusive upon the creditor. Why shall he complain if the same effect is given to notice to him of the preceding sale, before he has secured a lien upon the property? The only consequence to him of the failure to record the deed, in such case, is the additional opportunity which has been afforded him of subjecting the property to his debt, by fixing his lien upon it between the time of sale, and his getting notice of it. It is sometimes said, that creditors should be protected unless they had notice at the time credit was given, because the credit is extended upon the faith of the debtor's owning the property, if the

title is then standing in his name. But this argument, if it is good for anything, proves too much. If the principle was sound, it would follow from it, that the creditor's right to satisfaction of his debt out of the property owned by the debtor at the time credit is given him, is superior to the claims of those subsequently dealing with him. The unrecorded deed is good between the parties; the grantee then has dealt with the grantor, and paid the consideration for the land upon the faith of the effectuality of his title, and that it will not be swept from him by liabilities contracted by the grantor; why then does he not occupy as favorable a position as the general creditor? If he does, and we think it can not be doubted, the record of his deed or notice to the creditor before any specific right of the latter has attached to the land should operate for his effectual security. (Daniel v. Sorrells, 9 Ala., 436.)

The judgment is reversed and the cause remanded.

Reversed and remanded.