## THOMASON v. SCALES, ET AL.

| 12 | 309 |
| 124 | 212 |
| 125 | 669 |

1. The term "creditors," in the act of 1842, to prevent the sacrifice of real estate, does not mean creditors at large of the debtor, but such only as have ascertained the *bona fides* of their debts, by obtaining judgment.

Error to the Chancery Court of Talladega.

THE bill was filed by the plaintiffs, to redeem a tract of land described in the bill, under the act of 1842, which had been sold under execution, against one Nicholas Scales, and purchased by Thadeus Scales, the defendant in error.

The complainant claims to be a creditor of Nicholas Scales, as the owner, and holder of a note, made by him to Andrew B. Creswell, for $120, dated the 4th October, 1844, and due the 1st January after; and alledges, that although the note was executed after the sale of the land, the debt evidenced by it existed previously, and was transferred to him in good faith, for a valuable consideration. That on the 19th February, 1845, being less than two years after the sale of the land under execution, complainant offered to redeem said land, and tendered to the purchaser the amount he had bid for the land, with ten per centum thereon, and agreed to credit the note he held against Nicholas Scales with the sum of $25, being more than ten per cent. on the amount bid for the land, and tendered to him a deed of conveyance for the same, which he refused to accept or execute, alledging that he held claims on the said Nicholas Scales, and averred his willingness to credit the said Nicholas with a large amount, but did not produce any claim, or disclose its character, or amount, though required to do so.

The bill further charges, that the complainant was put in possession of the land by Thaddeus Scales, after his purchase, and that proceedings have been commenced by a grantee of T. Scales to oust him from the possession, &c. The prayer of the bill is, that he be allowed to redeem the land, for an injunction, &c.

The defendants answered the bill, but as the chancellor dismissed the bill for want of equity, considering that none but judgment creditors had the power to redeem under the statute, they need not be stated.

S. F. RICE, for the plaintiff in error.

1. The act "to prevent the sacrifice of real estate" is remedial, and should be liberally construed, so as to effectuate the plain intent of its enactment. The force of *technical*

Thomason v. Scales, et al.

*terms* must yield to the will of the legislature.   [Wilkinson v. Leland, et al. 2 Peters R. 627 ; Iverson v. Shorter, 9 Ala. R. 713 ; 19 Viner's Ab. note, 515 ; note, 518 ; note, 519.]

2. The right to redeem is not by that act expressly confined to *judgment* creditors.   Nor is the right of a *judgment* creditor placed by that act beyond a contestation.   The right belongs to all *bona fide* creditors.   And the *bona fides* of the demand must be a subject for contestation, on an application to chancery to redeem, whether the demand be reduced to judgment or not.

3. A note is, by our statute, made sufficient evidence of the debt, when the note is declared on—unless denied by a plea verified by affidavit.   And a creditor holding a note is entitled to redeem, provided he can prove his demand to be *bona fide*—not simulated.

4. If the right to redeem is confined by construction to *judgment* creditors, then the estate of debtors will be sacrificed by the accumulation of costs in reducing *bona fide* demands to judgment.

L. E. PARSONS, contra.

1. In cases of fraudulent settlement, a *bona fide* creditor must be a judgment creditor.   [Coleman v. Croker, 1 Vesey, Jr. 160 ; Read v. Livingston, 3 Johns. Ch. 481 ; Miller v. Thompson, 3 Porter, 196.]

2. " The creditor must obtain a judgment before he can redeem from another," who is a purchaser at sheriff's sale. [McGavock v. Woods, 10 Yerger,      ; Wood, et al. v. Morgan, et al., 4 Humph. 374.]

3. The complainant does not appear to have been a creditor when this land was sold.   The debt itself had not been created ; and it was not transferred to him until long after.

4. The deed presented for execution was not such as the statute requires.   [Clay's Dig. 502, § 2.]

5. This bill is multifarious.   The right to this conveyance and the *bona fides* of that which was made to Scales in trust for Mrs. Lovell, are entirely independent matters, separate and distinct.   [McCartney, et al. v. King, Calhoun, et al., at this term.]

ORMOND, J.—The question to be determined in this case depends upon the true construction of the act of 1842, to prevent the sacrifice of real estate. [Clay's Dig. 502.] The first section provides, that the debtor whose interest in any real estate has been sold under execution, may redeem the land within two years from the sale, by a payment to the purchaser, or any one claiming under him, of the principal sum bid upon the land, together with *ten per centum per annum* thereon, with all lawful charges.

The second section gives the same right to other *bona fide* creditors, upon the same terms, "and shall further offer and agree to credit the person whose estate was sold, with the further sum of ten *per cent.*, or more, on the amount bid at execution sale, it shall be the duty of such purchaser to convey such interest, to such *bona fide* creditor, at their proper cost, unless such purchaser, shall pay, or secure to be paid, within six months thereafter, to such *bona fide* creditor the sum proposed to be advanced by him, on the bid at sheriff's, or execution sale. The third section gives the purchaser the right, if he is a *bona fide* creditor of the debtor, to credit the debtor with the sum proposed to be advanced on the bid, and keep the property; and the fourth section authorizes any other *bona fide* creditor of the debtor, to redeem on the same terms, from one who has previously redeemed the land, and so on of other creditors, *ad infinitum.*

The whole question in this case, is resolved into an inquiry of the meaning of the legislature, in the use of the term *bona fide creditor.*

The term *bona fide*, when applied to a purchaser, has a definite ascertained meaning, but when the same term is applied to a creditor, the sense in which it isued is not so clear, especially in the connection in which it is found. One may assert an unfounded claim against another, but in no just sense can he be termed a creditor. The term is the correlative of debtor, and can only be applied to one who has a just claim for money. It is therefore quite probable, that in prefixing the emphatic term *bona fide*, such an ascertained claim as the law presumes to be *bona fide*, was intended, because it is ascertained to be due, by the judgment of a court, after a contestation. It is but fair to presume it was not employ-

ed without meaning, and this was most probably what was passing in the legislative mind at the time of its enactment.

Independent, however, of the argument drawn from the peculiar phraseology of the statute, we think the term "creditors," was not intended to mean creditors at large of the debtor, but such only as have ascertained the *bona fides* of their debt, by obtaining a judgment upon it. This has been the construction placed on the word *creditors*, in analagous cases.

The statute of 1828, (Clay's Dig. 255, § 5,) making void certain unrecorded deeds, against creditors, and subsequent purchasers without notice, has been held to apply only to judgment creditors. [Ohio Life Ins. Co. v. Ledyard, 8 Ala. R. 873; Daniel v. Sorrelles, 9 Id. 439.] So it is a well established rule, of this and other courts, that a creditor at large cannot seek the aid of a court of chancery, to reach the equitable effects of his debtor, until he has established his claim by obtaining a judgment, and exhausted his legal remedy.

But in addition to these analogies, we think it quite clear, that the construction contended for, would in a great measure defeat the object the legislature had in view, and go very far to convert the statute into an engine of fraud.

The policy which dictated the enactment, was doubtless the prevention of the sacrifice of real estate. To accomplish this, each creditor is invited in succession, to bid for the land, and if sold beneath its value, it was supposed they would continue to bid, as a means of saving their debt, until the price approximated to the real value of the land, and if this could be accomplished, it would doubtless be a real benefit, conferred both on the debtor and his creditors. Now let us suppose a tract of land sold for less than its value under execution, and a creditor of the debtor demands from the purchaser the right to redeem under this statute. How is the purchaser to be satisfied, that he is entitled to redeem the lands? How is he to know that he is a creditor? Must he yield up his rights upon the mere declaration of the applicant that he is a creditor? And if not, by what proof is the fact to be ascertained? These are important and necessary questions to be answered, as he must either yield up his rights on

40

a mere demand of the applicant, or submit to such *extra* judicial proof as he may think proper to adduce, or by a refusal hazard the expense and trouble of a law suit, which may be greater than his interest in the land. It is impossible in our opinion, to suppose that the legislature calculated such consequences as these to flow from the right conferred on a creditor to redeem the land, and all these difficulties are overcome by requiring the proof afforded by a judgment against the debtor, the highest *prima facie* evidence of the fact, as it would be in most instances conclusive against the debtor himself. If record evidence of the debt is not required, then the presentment of an open account against the debtor, a contingent liability, as an indorsement, or a promissory note, which may be paid, or made for the occasion, would require the purchaser to yield his rights, or risk a law suit.

It is very important in this view, that the statute provides no mode of proof by which to ascertain whether one offering to redeem is in fact a creditor, thus raising the inference, that the demand exhibited as evidence of the fact, should prove itself. This inference is greatly strengthened from the fact, that the attention of the legislature was directed to the subject, as is evident from the fact, that they provided the mode for ascertaining the value of the "needful improvements" made by the purchaser, which the creditor was to pay, or secure, before he was permitted to redeem.

Again, the whole scheme of the act, presupposes, that the creditors will bid upon each other, until the worth of the land is obtained, and as a matter of course the creditor first applying to redeem, will have the *prior* right of redemption. But how could this process go on, if there were no means of determining at once the right of the creditor, as such, to redeem. If the fact that he was a creditor, may be ascertained afterwards, in a chancery suit instituted by him, to compel the purchaser to permit him to redeem, the two years allowed for redemption, would be exhausted in most cases during this litigation, and the result would be, that one of the two contending parties would get the land, to the exclusion of all the other creditors; and this generally at a grossly inadequate price. It cannot be doubted, that the effect of the law is to reduce the price of the land at the first sale, and this

necessary result could only be compensated by opening the first purchase, to the competition of successive bidders. This would be entirely prevented, if the argument insisted on is correct, and all the beneficial effects of the law annihilated.

It must also open a wide door to fraud and perjury. The purchaser may himself claim to be a creditor of the person whose land has been sold, and by crediting his debtor with the amount of the redemption money offered, deprive the party offering to redeem of his right to do so. If any thing short of record evidence of the debt is sufficient, he has only to assert a claim against the original owner, to extinguish the offer to redeem, and may collude with the former owner to keep off all the creditors. So also the former owner may collude with another person, and by simulating indebtedness deprive the purchaser of his right, and hold the land against the *bona fide* creditors.

It is no answer to this argument, that these pretended claims could be exposed by a resort to the tribunals of the country. Possibly in some cases this might be done, but it is manifest the legislature intended no such costly and dilatory process; but designed a plain and simple proceeding, which could be worked out by the people themselves, nothing more being required, after the fact that one offering to redeem was a creditor, was ascertained, but a simple computation; and as to the only matter about which it was supposed a difficulty could arise, care was taken to provide the mode of adjusting it.

These considerations lead us to the conclusion, that the creditors spoken of in the statute, are judgment creditors, and that no others are entitled to its privileges. We have been referred to the cases of McGavock v. Woods, 10 Yerger, and Wood v. Morgan, 4 Humph. 374, where it is said, the same point has been thus decided, upon a statute similar to ours, but we have not been able to get access to these books, or we should have fortified our judgment by a reference to them.

Let the decree of the chancellor be affirmed.