### R. A. BROWN & CO. v. TOM CHANCELLOR ET AL.

(Case No. 4981.)

1. GARNISHMENT.— Except in a case in which an original attachment has issued, a writ of garnishment can issue only when the debt sued for is due.

2. PROMISSORY NOTE — DAYS OF GRACE.— Under the law merchant a note payable on demand was not entitled to days of grace, and suit could be brought on it without payment being first demanded.

3. STATUTE CONSTRUED — PROMISSORY NOTES — DAYS OF GRACE.— One of the leading purposes of the act of March 20, 1848, was to restrict the operation of the law merchant, in reference to days of grace, to such paper as was between merchant and merchant, their factors and agents, rather than to prescribe the particular classes of negotiable paper which should be entitled to grace. One of the leading objects of the act of January 11, 1862 (Pasch. Dig., 234; R. S., 276), which was amendatory of the act of March 20, 1848, was to place on the same footing such negotiable paper as was therein contemplated, whether made between merchant and merchant, their factors and agents, or between other persons, in so far as allowing days of grace thereon was concerned.

4. CONSTRUCTION OF STATUTES.— An affirmative statute does not repeal an affirmative statute, and if both may stand together, they should have a concurrent efficacy. But if the latter be contrary to the former, it amounts to a repeal of the previous law.

5. SAME — LAW MERCHANT.— The law merchant remains in force in Texas except as modified or changed by statute.

6. STATUTES CONSTRUED — DAYS OF GRACE.— The statutes of January 11, 1862, and of March 20, 1848, construed, and the conclusion announced that the former act did not give days of grace to paper, except to such as was entitled thereto by the law merchant; that a note payable on demand is not entitled to days of grace, and suit may be maintained thereon without previous demand.

7. PARTNERSHIP — DISSOLUTION OF, BY MARRIAGE.— The marriage of a woman dissolves a business partnership, which prior to that had existed between herself and another, and after marriage she can form no partnership for the transaction of business, either with her husband or the former partner, which the law can recognize.

8. PARTNERSHIP.— A general authority given by one partner on the dissolution
of the firm to his late copartner, to settle up the business of the late firm,
does not authorize him to give a note in the firm name for a firm debt,
or to renew one that had been given before dissolution of the firm.

9. CASES REVIEWED AND DISCUSSED.— The cases of Kieffer v. Ehler, 18 Penn.
St., 391; Phillips v. The State, 15 Georgia, 521, and Parks v. Willard, 1 Tex.,
354, reviewed.

APPEAL from Ellis.    Tried below before the Hon. Geo. N. Al-
dredge.

The opinion states the case.

*S. C. McCormick,* for appellants, cited:  Cook v. Cook, 19 Tex.,
436, 437; White & Wilson's Condensed Appellate Court Reports,
p. 657, § 1156; R. S., art. 276; Angell on Limitations, § 95; 1 Dan-
iels on Neg. Inst., § 617; Wenman v. Mohawk Ins. Co., 28 Am.
Dec., 464; S. C., 13 Wend. (N. Y.), 267; Smith v. Blythewood, 33
Am. Dec., 111; S. C., Rice's Law (S. C.), 245; Wheeler v. Warner,
7 Am. Rep., 478; S. C., 47 N. Y., 519; District Court Rules, 6, 7, 8,
9 and 10 (47 Tex., 617); Goode v. McCartney, 10 Tex., 193; R. S.,
arts. 2851, 2852 and 2853; Davis v. Willis, 47 Tex., 154; Parsons on
Partnership (3d ed.), star pages 69, 70, 71, 389, 390; Sayles' Texas
Pleadings, p. 45, § 11; Hill v. George, 5 Tex., 87; Grimes v. Ha-
good, 19 Tex., 246; 1 Parsons on Contracts (6th ed.), star pages 65
and 66; Baltzen v. Nicalay, 53 N. Y. (8 Sick.), 467; White v. Madi-
son, 26 N. Y. (12 Smith), 117; Collen v. Wright, 8 Ell. & Bl., 647;
S. C., 40 Eng. Law & Eq., 182.

*Edwards & Fears,* for appellees, cited: R. S., arts. 183, 276; Wat-
kins v. Willis & Bro., 58 Tex., 521; Campbell v. Lane, 25 Tex. Sup.,
93.; Moore v. Hollomans, id., 81; Sayles' Treatise, §§ 267, 291, 306;
1 Dan. on Neg. Inst. (2d ed.), §§ 1, 1a, 104, 105, 620, 621; 1 Pars.
on Cont., 259, 260 (5th ed.); id., star pages 259, 260 (7th ed.); Syd-
nor v. Totham, 6 Tex., 189; Culberson v. Cabeen, 29 Tex., 254; Cox
v. Reinhardt, 41 Tex., 591; White v. Tudor, 24 Tex., 639; Haddock
v. Crocheron, 32 Tex., 276; Kendall v. Riley, 45 Tex., 20; Davis v.
Willis, 47 Tex., 154; Harris v. Finberg, 46 Tex., 83; 1 Dan. on Neg.
Inst., §§ 370, 370a, 371; Pars. on Part. (3d ed.), star page 386 *et seq.*

STAYTON, ASSOCIATE JUSTICE.— This action was brought by the
appellants against Tom Chancellor, Thos. White, and M. L. White,
his wife, on the 8th day of January, 1884, on a note executed by
Tom Chancellor, on the same day, in the name of Tom Chancellor

& Co. The note was payable on *demand*, to the order of the appellants, at their office in the city of Galveston. It was claimed that the appellees composed the firm of Tom Chancellor & Co. at the time the note was executed.

Writs of garnishment were sued out and served on several persons on the same day the suit was filed, which on motion were quashed, upon the ground that the note was entitled to days of grace, and therefore not due at the time the writs of garnishment were sued out. The petition was also demurred to on the ground that the suit was prematurely brought. This objection, however, was obviated by an amendment, permitted on payment of all costs due to the time the amendment was filed.

Mrs. M. L. White pleaded her coverture in bar of the action, and Thomas White answered under oath, denying that he ever was a member of the firm of Tom Chancellor & Co., or that he executed or authorized any one for him to execute the note sued on, and he alleged that the firm of Tom Chancellor & Co. was dissolved on January 5, 1884.

It appeared that from sometime in the year 1877, to the time of her marriage to Thomas White in 1879, Mrs. M. L. White, *nee* Chancellor, and Tom Chancellor were partners in the mercantile business carried on in the firm name of Tom Chancellor & Co., and that after her marriage with Thos. White the business was carried on in the same manner as before, under the same firm name, and that Thos. White gave his attention largely to the business in which his wife was interested, until January 5, 1884, when the entire business was sold out to satisfy creditors, and, as he alleges, it was then dissolved. All the evidence tends to show that there was no express agreement or understanding that Thos. White should become a member of the firm of Tom Chancellor & Co., but he seems to have participated in the management of the business in the interest of his wife, consulting about the business, staying in the store, selling goods and waiting on customers.

It further appears that there was no new arrangement or partnership agreement between Tom Chancellor and Mrs. White after her marriage, but that the business went on as before, Mrs. White being the owner of two-thirds of the stock and Tom Chancellor the owner of the residue.

The indebtedness for which the note sued on was given accrued in October, 1883, and thereafter; but the action is based on the note and not on the matters which were the consideration for the indebtedness for which the note was given. The cause was tried without

a jury and a judgment was rendered for the appellants against Tom Chancellor, and against them as to White and wife.

The statute permits a writ of garnishment to issue only when the debt sued for is due (R. S., 183), unless in a case in which an original attachment has been issued.

This action having been instituted and the writs of garnishment sued out on the same day the note was executed, the questions whether the suit was prematurely brought, and the writs of garnishment prematurely issued, depend on whether or not a note payable on demand is entitled to days of grace. Under the law merchant such paper is not entitled to days of grace. Daniel on Neg. Inst., 617; Edwards on Bills, 523; Byles on Bills, 162; Story on Promissory Notes, 224. Suit may be brought on such paper under the law merchant without any demand for payment being first made (Cook v. Cook, 19 Tex., 437; Field v. Nickerson, 13 Mass., 137); and on such paper suits have been maintained which were instituted on the same day the paper was executed. Cammer v. Harrison, 2 McCord, 246; Smith v. Blythewood, Rice, 246; 1 Parsons on Notes and Bills, 270, 415.

Prior to the act of January 11, 1862 (Pasch. Dig., 234; R. S., 276), and subsequently to the act of March 20, 1848, there could have been no doubt on this question, unless the paper evidenced a contract between merchant and merchant, their factors and agents; for, from the passage of the last named act, days of grace were allowed only on paper between such persons. O. & W., 99; Oliphant v. Dallas, 15 Tex., 141; Moore v. Hollomans, 25 Tex. Sup., 82; Campbell v. Lane, 25 Tex. Sup., 94.

Under the act of March 20, 1848, which was as follows: "Three days of grace shall be allowed on all bills of exchange and promissory notes assignable and negotiable by law; provided, that the fourth, fifth and sixth (the section in question) sections of this act shall extend only to contracts between merchant and merchant, their factors and agents," we have no decision whether a note payable on demand and evidencing a contract between merchant and merchant, their factors and agents, would have been entitled to days of grace.

The act of January 11, 1862, is the same as the act of March 20, 1848, of which it is amendatory, except that the proviso in the earlier act, which limited its effect to contracts between merchant and merchant, their factors and agents, is stricken out; thus making the last act to operate on negotiable bills and promissory notes between *all persons*, as had the former act only on such paper as

evidenced a contract between merchant and merchant, their factors and agents.

Such being the state of the law at the time the act of January 11, 1862, was passed, it is evident that the leading, if not the sole, purpose of the amendment, was to place on the same footing such negotiable paper as was therein contemplated, whether made between merchant and merchant, their factors and agents, or between other persons, in so far as allowing days of grace thereon was concerned; as it is evident that one of the leading purposes of the act of March 20, 1848, was to restrict the operation of the law merchant, in reference to days of grace, to such paper as was between merchant and merchant, their factors and agents, rather than to particularly prescribe the particular classes of negotiable paper which should be entitled to grace.

The act of March 20, 1848, was not strictly a remedial law, save to such extent as it was restrictive of the law merchant; but was only declaratory as to negotiable bills and promissory notes between merchant and merchant, their factors and agents, of a rule so long established by custom among merchants, and so long enforced by the courts, as to become a part of the common law of England.

In reference to such laws it is said: "These (in England) are made where the old custom of the kingdom is almost fallen into disuse, or become disputable, in which case the parliament has thought proper, in *perpetuum rei testimonium*, and for avoiding all doubts and difficulties, to declare what the common law is and ever hath been. And such statutes are expressed affirmatively or in negative terms. A statute made in the affirmative, without any negative expressed or implied, does not take away the common law. It follows that it does not affect any prescriptions or customs clashing with it which were before allowed; in other words, the common law continues to be construed as it was before the recognition by parliament." Dwarris, 68.

There is another rule of construction which is thus expressed: "An affirmative statute does not repeal an affirmative statute; and if the substance be that both may stand together, they shall have a concurrent efficacy. But if the latter be contrary to the former, it amounts to a repeal of the former, for it is a general principle, '*legis posteriores priores contrarias abrogat.*' But this is meant of a case where a statute, by its matter, necessarily implies a negative, for an act of parliament may be repealed by the express words of a subsequent statute or by implication." Dwarris, 69–72.

In the absence of the act of March 20, 1848, there can be no doubt

that days of grace would have been allowed upon all such paper as was, under the well known rules of the law merchant, entitled to grace; and that act, instead of being intended to give favor to bills and notes negotiable, was held practically to restrict and limit the right which the law merchant gave to such paper, without reference to the parties thereto, and to confine its operation to negotiable paper solely between merchant and merchant, their factors and agents. Oliphant *v.* Dallas, 15 Tex., 141.

The act of January 11, 1862, amending the act of March 20, 1848, left the rule as to days of grace as it stood under the law merchant, unless it was intended thereby to provide a new rule, and to extend grace to a class of negotiable paper which was not entitled to it under the law merchant.

"The common law of England (so far as it is not inconsistent with the constitution and laws of this state) shall, together with such constitution and laws, be the rule of decision, and shall continue in force until altered or repealed by the legislature," was declared by the act of January 20, 1840 (R. S., 3128); and so the law has stood from that time until the present.

The act of January 20, 1840, as well as the act of January 11, 1862, has been carried into the Revised Statutes, which provides: "That the provisions of the Revised Statutes, so far as they are substantially the same as the statutes of this state in force at the time when the Revised Statutes shall go into effect, or of the common law in force in this state at said time, shall be construed as continuations thereof, and not as new enactments of the same" (R. S., final title, sec. 19); hence the act of January 11, 1862, must be construed as of the day it became a law, and by the rules then applicable. The common law declares that days of grace cannot be allowed on bills and promissory notes negotiable, when in terms payable on demand.

The act of January 11, 1862, declares that "three days of grace shall be allowed on all bills of exchange and promissory notes assignable and negotiable by law." Was the latter act intended to establish a rule in any respect different to that declared by the law merchant; intended to alter or repeal that rule, and to give days of grace to a class of paper to which, for obvious reasons, such favor had been denied by the law merchant; or was it intended by that act only to abolish the restricted rule given by the act of March 20, 1848, and to restore the rule of the law merchant?

The restriction found in the act last named was not based on the character of the instrument, but on the character of the *persons* be-

tween whom the paper existed; the instruments referred to in it were not particularly defined, but were referred to as a class known to the commercial world as negotiable bills and promissory notes.

If the rule of the common law, the law merchant, denying to negotiable bills and promissory notes days of grace, when payable on demand, was in words inserted in the statute (and is it not so in legal effect?), as in the act of January 11, 1862, but little doubt could be entertained of the true construction to be placed on the two acts; the one negative in its character, and relating to a particular kind of negotiable paper; the other affirmative, and relating in general terms to negotiable bills and promissory notes. In such case would not the negative statute, which evidenced the fact that the legislative mind was particularly directed to the named paper, in reference to which the negation applies, control in reference to that particular paper? Such would seem to be the general rule. The construction in such a case certainly would be that the one act was not inconsistent with the other, and that the more general act must be read as excepting from its operation that to which the other in precise terms applied a negative; and we do not see, if we keep in view the fact that the acts of March 20, 1848, and January 11, 1862, are in their natures largely declaratory of the common law, that it makes any difference, if the rule of the law merchant be considered to have no greater effect than an affirmative statute, which the act of January 11, 1862, is; for there is not necessarily any such inconsistency between the two as to force us to the conclusion that the common law rule is altered or repealed by implication. Ellis v. Batts, 26 Tex., 706; Neil v. Keese, 5 Tex., 32; Scoby v. Sweatt, 28 Tex., 728.

The statutes of this state in relation to bills of exchange and promissory notes are not and do not profess to be a complete code, regulating all the multiform questions which in the course of business daily arise; on the contrary, they assume the existence of and recognize the binding force of the law merchant, except in so far as it may be thereby changed.

In a multitude of cases, language as broad as that contained in the act of January 11, 1862, has been construed in the light of the manifest object sought to be attained by the legislature; the condition of the law as it before stood, and the remedy intended; and thereby the broad generality of words used restrained, of which the following are a few instances:

The act of February 5, 1840, provided that "*all* bargains, sales and other conveyances whatever of any lands, . . . and *all*

deeds of trust and mortgages whatever which shall hereafter be made and executed, shall be void *as to all creditors* and subsequent purchasers for valuable consideration without notice, unless," etc. (Pasch. Dig., 4988); yet, notwithstanding the broad language used, which would literally embrace any class of creditors, this statute, as have been similar ones in other states, has, without wavering or dissent, been held to apply, so far as it affects creditors, only to such creditors as acquired some character of lien on the property. Ayres. *v.* Duprey, 27 Tex., 607; Grace *v.* Wade, 45 Tex., 527.

In Parks *v.* Willard, 1 Tex., 354, this statute was not regarded as introducing a new rule, but as only declaratory of the law as recognized in the chancery jurisprudence of England and America.

In Kïeffer *v.* Ehler, 18 Pa. St., 391, under a statute which provided that "*all debts* and all deposits of money and other effects belonging or due to a defendant by the person or corporation upon which service shall be made shall remain attached," etc. Process in the nature of a writ of garnishment was served on the maker of a negotiable note to secure a debt due by the payee. The note before maturity, but after service of process on the maker, was transferred to a *bona fide* holder, and through the generality of the words used in the statute it was claimed that the creditor was entitled to the proceeds of the note. The court said: "Care is to be taken that laws of general shall not be regarded as of universal application; and this caution is required in relation to the law for attaching debts in execution, and declaring that 'all debts' so attached shall remain in the hands of the garnishees to answer the debt.

" In acts of assembly, as well as in common parlance, the word 'all' is a general rather than a universal term, and is to be understood in one sense or the other according to the demands of sound reason. It is certainly broad enough to include debts due by bills of exchange and promissory notes; and there is nothing in their nature that excludes them from its operation. But they have a legal quality that renders the hold of an attachment upon them uncertain; . . to hold that an attachment prevents a subsequent *bona fide* indorsee for value from acquiring a good title would be almost a destruction of one of the essential characteristics of negotiable paper."

In the case of Phillips *v.* State, 15 Ga., 521, speaking of the too common use of the word "all" in statutes, Lumpkin, J., for the court, said: "True, it says, that in *all* cases where a levy is made, etc., one is amazed, in casting a glance over our statute book, to find how often this form of expression occurs, frequently signifying,

as here, not absolutely all, but all of a particular class only. Indeed, it seems to be common to all writings, lay as well as legal, sacred as well as profane. And the generality of the phrase is frequently to be restrained in an act, not only by the context, but by the general form and scheme of the statute, as demonstrative of the intention of the legislature."

The following cases illustrate the general rules for the construction of statutes similar to that under consideration: Stone v. Elliott, 11 Ohio St., 258; Flake v. Van Wagenen, 54 N. Y., 28; United States v. Herron, 20 Wall., 251; Brinsfield v. Austin, 39 Ala., 227; Posey v. Pressley, 60 Ala., 248; Dano v. M. O. R. R. Co., 27 Ark., 566; Douglass v. Howland, 24 Wend., 39; Thomason v. Scales, 12 Ala., 313; 1 Kent, 464; Lewis v. Aylott, 45 Tex., 199. We have not deemed it necessary to refer to the confusion which would result in reference to negotiable paper if any other construction was put on the act of January 11, 1862. That act provides no rule for the decision of many questions which would necessarily arise, as does not the law merchant if they be regarded as entitled to grace.

We are of the opinion that it was not intended by the act of January 11, 1862, to give grace to paper other than such as was entitled thereto by the law merchant, and that the suit was not brought before the maturity of the paper sued on; from which it follows that the court below erred in setting aside the writs and other proceedings in garnishment, on the ground that the debt was not due at the time such garnishment proceedings were had. This ruling holds erroneous the action of the court in giving costs, which accrued prior to the filing of the amended petition, against the appellant.

The marriage of Mrs. Chancellor with Thomas White dissolved the partnership, which, prior to that event, had existed between her and Tom Chancellor. Story on Partnership, 306; 1 Collyer's Law of Partnership, 151. Subsequently to that event, Mrs. White, under the former decisions of this court, had no power to form with Tom Chancellor, or with him and her husband, a partnership by which, as a partner, she could be bound. Bradford v. Johnson, 44 Tex., 382; Wallace v. Finberg, 46 Tex., 44; Story on Partnership, 306; 1 Collyer's Law of Partnership, sec. 14.

It is unnecessary to consider whether Thomas White, in any event, might have been held liable as a partner with Tom Chancellor by reason of the facts shown to have existed had the suit been brought on the original indebtedness; for it appears that the note sued on was executed by Tom Chancellor alone, and without any authority from Thomas White, and this, after the dissolution

of the partnership between them, if the facts formerly existing ever created that relationship; for it may be regarded as settled by the decisions in this state, that a general authority to one partner, on dissolution, to settle the business of the firm, does not authorize him to give a note in the name of the firm for a firm debt, or to recover one given before dissolution. White *v.* Tudor, 24 Tex., 642; Kendall *v.* Riley, 20 Tex., 27; 1 Daniel on Negotiable Instruments, 370; Story on Partnership, 322; 1 Collyer's Law of Partnership, 171.

There is nothing in the facts of this case to vary these general rules.

The record does not present facts sufficient to enable this court properly to dispose of the matters growing out of the writs of garnishment, and for the errors indicated the judgment of the court below will be reversed and the cause remanded that it may be proceeded with in accordance with this opinion; and it is so ordered.

REVERSED AND REMANDED.

[Opinion delivered April 25, 1884.]