**NATIONAL DEPOSIT BANK OF OWENS-
BORO, KY., v. MONTGOMERY.
(No. 7260.)**

(Court of Civil Appeals of Texas. San An-
tonio. Jan. 28, 1925. Rehearing Denied
March 4, 1925.)

**1. Partnership ⊚⊐216(2) — Answer alleging
controversy between partners concerning
partnership affairs foreign to issue in suit on
firm note.**

In action by bank against one partner on
a partnership note, allegations in defendant's
answer as to controversy between partners as
to their partnership affairs should have been
stricken, and evidence offered thereunder should
have been excluded, as being wholly foreign to
plaintiff's cause of action.

**2. Partnership ⊚⊐200—Bank suing on part-
nership note could sue either partner alone.**

A bank could sue either partner alone on a
partnership note, and, where partners lived in
different states and could not be sued in one
action, it was immaterial that it was suing de-
fendant at the instance and expense of the
other partner.

**3. Partnership ⊚⊐290—Partnership note given
by partner to payee without knowledge of dis-
solution binding on copartners.**

Where a partner, shortly after dissolution
of partnership, and without authority of other
partner, gave a partnership note to a bank but
informed bank that partnership was still op-
erating, and bank did not know that partner-
ship had been dissolved, note was binding upon
all partners.

Appeal from District Court, Bexar Coun-
ty; Robt. W. B. Terrell, Judge.

Action by the National Deposit Bank of
Owensboro, Ky., against W. T. Montgomery.
Judgment for defendant, and plaintiff ap-
peals. Reversed and remanded.

Birkhead, Lang & Beckman and Hitzfeld &
Lynch, all of San Antonio, for appellant.

J. D. Dodson and U. S. Algee, both of San
Antonio, for appellee.

SMITH, J. During the year 1917, W. T.
Montgomery, F. D. Perkins, and James C.
Ellis entered upon equal terms into a co-
partnership, under the firm name of Mont-
gomery, Perkins & Ellis, for the specific
purpose of constructing public roads in the
state of Kentucky, under contracts executed
with the officials of Daviess county for that
purpose. Subsequently, Montgomery pur-
chased Perkins' interest in the partnership
business, which was continued, however, un-
der the original firm name. During the ac-
tivities of the firm, Montgomery resided in
Bexar county, Tex., while Ellis, his copart-
ner, resided in Owensboro, in Daviess coun-
ty, where the firm's activities were centered.
Ellis was the managing partner of the firm,

at least during the last few years of its
operations, making all the arrangements for
financing those operations, and otherwise di-
recting its affairs. His actual administra-
tion seems to have been successful and en-
tirely satisfactory to Montgomery, who, so
far as the record shows, has never complain-
ed thereat, and does not now do so. During
the course of these operations, Ellis from
time to time borrowed money in behalf of
the firm from the National Deposit Bank of
Owensboro, appellant herein, and by this
means those operations were financed. The
loans were procured from the bank upon "de-
mand" notes executed by Ellis in the name
of the firm, and also by him individually, as
surety, which was in all cases required by
the bank. As the construction work pro-
ceeded and payments were made by the
county to the firm, Ellis would pay off the
outstanding notes, and divide the net bal-
ances between Montgomery and himself. As
other funds were needed, new loans were
made and notes executed, so that by this
process there were many like transactions
with the bank, covering a period of several
years, and involving loans aggregating more
than $100,000 in amount. The last of the
several roads which the firm contracted to
build was completed and accepted by the
county on, or immediately prior to, October
29, 1921, on which date Ellis gave the bank
the firm's note, in the usual form, for $1,770,
in renewal of outstanding firm obligations
to the bank. The note, as usual, was payable
on demand. Subsequently, when the bank
called upon the firm through Ellis for pay-
ment of this note, the latter deferred pay-
ment, stating that Montgomery and Perkins
had left the state, and he was unable to get
a final settlement of the partnership affairs,
but hoped to do so soon. This settlement was
not made, and later on, after reaching an
understanding with Ellis that the latter
would pay the expenses of the litigation if it
was unsuccessful, the bank brought this suit
in Texas against Montgomery, and sought to
recover the amount of the note from him
alone. Upon a trial without a jury the court
below rendered judgment denying any re-
covery to the bank, which brings this appeal.

In his answer to the bank's petition, after
denying under oath that the partnership ex-
isted at the time the note sued on was ex-
ecuted, Montgomery sought to defeat liability
upon the contentions, which were reflected in
the findings and conclusions of the trial
court, that the partnership had been dissolv-
ed previous to the execution and delivery of
the note to appellant; that the partnership
was a special partnership for the construc-
tion of roads in Kentucky, which appellant
knew, and that the last of such roads was
completed and accepted prior to October 29,
1921, the date the note sued upon was execut-

⊚⊐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
269 S.W.—54

ed and delivered to appellant; that the note was executed and delivered upon completion of the last road, and represented claims which appellant had against the firm, and was executed without the knowledge or consent of appellee; that Ellis had control of all the firm assets and had never furnished appellee any acceptable statement as a basis for final accounting between them, although appellee had requested the same; that appellee had paid the sum of $844.19, for the benefit of the firm during its existence, for which he had never been given proper credit; that Ellis resides in the same town with and is a customer of appellant, and that appellant knew at the time of the filing of this suit of the status with reference to no settlement of accounts between Ellis and appellee and that appellee refused to recognize his liability upon the note and was demanding a settlement; that with knowledge of these facts appellant instituted this suit for the purpose of aiding Ellis to force appellee to pay this note without giving him any settlement of the partnership accounts; and that appellant did this under an agreement with Ellis that he would indemnify appellant against all costs and expenses in event of its failure to compel appellee to pay the note.

In his answer appellee Montgomery prayed that, before any judgment should be rendered against him on the note, appellant bank, as the agent of Ellis, be required to submit to an accounting between Montgomery and Ellis, although the latter was not a party to the suit, originally, by cross-action, or otherwise. At the conclusion of the testimony, however, Montgomery withdrew this prayer. ·

[1] We think the court below was clearly in error in considering the pleadings and evidence offered by appellee concerning the controversy between Montgomery and Ellis as to their partnership affairs. That controversy had no place whatever in a suit by the creditor upon the firm obligation. If the partnership books were out of balance, or if one partner could be shown to have defrauded the other, or if one owed the other or refused an accounting, the creditor was in no wise concerned, and neither fact nor condition could effect the liability of the copartners upon the firm obligation to the bank, which is not disputed by either partner, except that appellee claims it was evidenced by a note given without authority after the debt accrued. There is no contention that the partnership did not get and use the whole amount of the loan covered by the note, and that being true, neither the obstinacy nor the contentiousness which each copartner charges against the other can be used by either as a defense to a suit upon the note by the creditor. The court should have struck out the allegations in which this defense was set up, and should have excluded all evidence offered

thereunder, as being wholly foreign to the plaintiff's cause of action. Stanton v. Bank & Trust Co. (Tex. Civ. App.) 232 S. W. 854, and Id. (Tex. Com. App.) 244 S. W. 593; Fowler Commission Co. v. Chas. Land & Co. (Tex. Com. App.) 248 S. W. 314.

[2] For like reasons the trial court should have 'disregarded appellee's contention that the bank could not recover because it came into Texas courts and sued appellee alone, at the instance and proffered expense of Ellis, appellee's copartner. Appellant had the unconditional right to sue appellee alone on the note. Fowler Co. v. Land & Co. (Tex. Com. App.) 248 S. W. 314. The motive or influence which prompted it to exercise this unrestricted remedy cannot possibly concern appellee. The diverse citizenship of the two partners made it practically impossible for the bank to sue both of them. It was relegated to the alternative of suing Ellis alone in Kentucky, or Montgomery alone in Texas. It chose to exercise the latter option, and in doing so was clearly within its rights.

[3] Appellee's chief defense was that the object of the partnership, which was special in its nature, was to build certain roads, and that the partnership was automatically dissolved with the completion and acceptance of the last of those roads; that upon such dissolution the authority of Ellis to bind the partnership or his copartners automatically ceased; and that as the bank at the time knew the nature of the partnership and knew of its dissolution, it could not hold appellee upon the note sued on, since it was executed by Ellis after the dissolution of the firm, and without Montgomery's knowledge or consent. The fallacy of appellee's position lies, not so much in the principles stated, as in the facts upon which those principles are predicated. It may be conceded for the purposes of this opinion that although the partnership was not dissolved formally or by consent or agreement, it was as a practical matter dissolved because the object for which it had been created had been accomplished. The court found that this constructive dissolution occurred "prior" to October 29, 1921, the date the note in question was executed and delivered, and although this finding must necessarily rest upon rather far-fetched inference, it, too, may be conceded as true. Then, with these two findings it may be further conceded, for the purposes of this opinion, that Ellis executed the note in question after the dissolution of the copartnership, although it was only a very few days thereafter, at most, and that he did so without express authority from his copartner, appellee herein. But there was no evidence whatever to support the further finding that the bank had any notice of this dissolution of the partnership when it accepted the note. It is true that it knew who the partners were, knew the specific objects of the part-

nership. It had financed the partnership's operations throughout its activities, dealing always directly with Ellis, the managing partner, depending upon him as the spokesman and representative of the firm, and requiring him to indorse all the firm obligations as surety. These facts were fully shown and conceded. But there was no evidence that the bank's officials knew that the firm's operations and activities had been completed, its objects finally and fully accomplished, its dissolution effected, and Ellis' power to bind it terminated. The evidence was, rather, that Ellis presented the note to the bank in accordance with long-established custom, as the obligation of the firm, that the bank accepted it, placed the proceeds to the credit of the firm on its account, as it had done in all the transactions theretofore. In addition to that, Ellis informed the bank's officials at the time that the partnership had not been dissolved, but was still operating. We will endeavor to apply the law, as we understand it, to this state of facts.

It is true, as a general rule, that one partner has, no authority, after dissolution of the partnership, to bind the firm upon a note executed in the firm name, even though the note may be given in settlement of firm debts, as was done in this case. Tudor v. White, 27 Tex. 584; Brown v. Chancellor, 61 Tex. 437, 444.

But it is equally true that even though such note is executed by one copartner after dissolution of the firm, and without authority from his copartner, the obligation is nevertheless binding on all, unless the creditor has notice of the dissolution. Davis v. Willis, 47 Tex. 154; Tudor v. White, supra; Long v. Garnett, 59 Tex. 229; White v. Hudson (Tex. Civ. App.) 36 S. W. 332. This exception to the general rule settles the appeal against appellee, for he wholly failed to meet the burden resting upon him to show the bank knew at the time it accepted the note that the partnership had been dissolved immediately prior thereto.

For the errors pointed out, the judgment is reversed and the cause remanded.