## SENTER & CO. v. BETTIE LAMBETH ET AL.

(Case No. 4773.)

1. VENDOR'S LIEN — REGISTRATION.— A vendor's lien which attaches to realty by virtue of the sale itself, and exists independent of any contract, verbal or written, between the parties stipulating for its existence, cannot in its very nature be recorded, and is that character of equitable claim not contemplated by the statutes of registration.

2. SAME — PURCHASER — NOTICE.— As against a purchaser with notice of a vendor's lien before sale under a judgment, which judgment constituted a legal lien on land, a court of equity will confine the operation of the legal lien of the judgment creditor to the actual interest which the judgment debtor had in the estate at the time such legal lien was fixed. The vendor's lien will be protected, though the purchaser, who had notice before his purchase at execution sale, had no actual notice when the judgment lien attached.

3. VENDOR'S LIEN.— There is a natural equity that land should stand charged with so much of the purchase money as is not paid, and that, too, without any agreement to that effect; this lien is founded on an implied trust between the vendor and vendee.

4. STATUTES CONSTRUED.— Art. 2318, Revised Statutes, construed, and Grace v. Wade, 45 Tex., 528; Borden v. McRae, 46 Tex., 396; Ayres v. Duprey, 27 Tex., 593; Wallace v. Campbell, 54 Tex., 90, cited.

5. CASES REVIEWED AND FOLLOWED.— Wallace v. Campbell, 54 Tex., 90; Grimes v. Hobson, 46 Tex., 418; Blankenship v. Douglass, 26 Tex., 229, and Grace v. Wade, 45 Tex., 528, reviewed and followed.

APPEAL from Lamar. Tried below before the Hon. R. R. Gaines.

*Dudley & McDonald,* for appellants, cited R. S., art. 2318; Wallace *v.* Campbell, 54 Tex., 87; Grace *v.* Wade, 45 Tex., 522.

*W. H. Johnson,* for appellees.

WEST, ASSOCIATE JUSTICE.— On July 15, 1881, appellee Bettie Lambeth filed her petition in this case against Scott Lambeth as the maker of a promissory note, for the recovery of the debt, and to enforce the vendor's lien on two tracts of land, one of two hundred acres, the other of one hundred and twelve and one-half acres; and alleging that appellants Senter & Co. claimed the two hundred acre tract, and that the widow and minor children of B. P. Lambeth claimed the one hundred and twelve and one-half acre tract. She made these parties defendants also, and claimed in her petition that the two tracts of land had belonged to the estate of M. Lambeth, deceased; that his administrator, B. P. Lambeth, had sold said tracts under an order of the probate court of Lamar county to Scott Lambeth, who was one of the heirs and distributees of said estate, for the sum of $3,125; that said Scott Lambeth executed his note to the administrator for the amount of his bid, less the amount of his distributive share of the estate, and that the administrator made him a deed to the lands; that December 4, 1879, there remaining due on his note the sum of $2,204, and the administrator being anxious to settle up the estate, it was mutually agreed between the administrator, Scott Lambeth, the purchaser, and the heirs, to wit,

plaintiff Bettie Lambeth, Nannie A. Lambeth, Thomas A. Lambeth and Mrs. S. A. Hammond (the other heirs having been arranged with), that the administrator should surrender up Scott Lambeth's note to him, and that the latter should execute to the heirs, severally and individually, his note for each of the heirs' interest in such unpaid balance, all of which was done, the note sued on being the one thus executed to plaintiff. The plaintiff also made her co-heirs, Nannie A. Lambeth, Thomas A. Lambeth and S. A. Hammond, to whom like notes had been executed, parties, and prayed for judgment for her debt, foreclosure of the vendor's lien, and adjustment of the rights and equities of all parties.

About the same time that plaintiff filed her petition, Nannie A. Lambeth, Thomas A. Lambeth and S. A. Hammond, joined by her husband, D. S. Hammond, filed in the same court their separate suits on the notes given to each respectively, making the same parties; and the petitions in all four cases being the same, the four causes were consolidated and thereafter conducted under the style of Bettie Lambeth *et al. v.* Scott Lambeth *et al.* By agreement of counsel, with the approval of the judge, all the papers of the three causes that were consolidated with this were left out of the transcript as being useless in the decision of the case, it being, by the terms of the agreement, understood that the petition in this case should be considered the petition of all the plaintiffs.

To the consolidated cause Senter & Co., appellants, answered, claiming ownership and possession of the two hundred acre tract under a sheriff's deed derived through certain attachment suits against Scott Lambeth, embracing levies on the land and eventuating in judgments for debt, and foreclosure of attachment liens, orders of sale, sale, and sheriff's deed to them for the land, claiming that at the time of the levy of the attachments they had no notice, either actual or constructive, of the existence of the debts and liens claimed by plaintiffs or either of them, and that, having paid over $500 in money at the sheriff's sale, on the faith of the purchase, they were *bona fide* purchasers, and prayed that the two hundred acres be held not subject to said liens as claimed by plaintiffs.

The widow and minor children of B. P. Lambeth, answering to the consolidated cause, admitted the facts set up in plaintiffs' petition, claimed that said B. P. Lambeth, for a valuable consideration paid, purchased the one hundred and twelve and one-half acre tract from Scott Lambeth under a general warranty deed, while Scott Lambeth was the owner of both tracts of land, and before the rights of Senter & Co. attached to the two hundred acre tract, and prayed

that, in ordering the sale of said tracts for the payment of plaintiffs' claims, the two hundred acres be first subjected.

Senter & Co., replying to their co-defendants' answer, opposed the relief claimed by them, and denied the application of the rule invoked, for certain reasons set up in their replication.

The cause was submitted to the court without a jury, and judgment was rendered for plaintiffs respectively for the debts claimed, foreclosing the vendor's lien on both tracts, and ordering the two hundred acres to be first sold and exhausting same before resorting to the one hundred and twelve and one-half acres. The judge filed his findings of the law and facts. Senter & Co., appellants, filed a motion for a new trial, which being overruled, they gave notice of appeal, assigned errors, and bring the case into the supreme court by appeal.

The fourth finding of the court is that the appellants had no notice of the vendor's lien of appellees until the day of sale, at which time, and immediately before the sale, appellees gave public notice through their attorneys of their lien on the land about to be sold.

The sole question in the case is whether, under the admitted facts, the lien and rights acquired by virtue of the writ of attachment, judgment and sheriff's sale are superior to those of the appellees, who hold the unrecorded vendor's lien, of which appellants had notice at or before the sale, but of which no notice was had when the writ of attachment was levied or when the judgment was obtained.

The evidence of the vendor's lien in this case was not recorded, nor was it, in the form in which it existed (being the lien springing by operation of law out of the transaction between the parties), susceptible of registration. Let us examine in this connection some of the adjudged cases in which the effect of this want of registration has been considered.

In Grace v. Wade, 45 Tex., 528; Borden v. McRae, 46 Tex., 396; Ayres v. Duprey, 27 Tex., 593; Wallace v. Campbell, 54 Tex., 90, and perhaps in some other cases that have escaped our observation, it has been held that, by force of our registration laws, a lien acquired by a judgment or the levy of an execution on the real estate of the debtor is superior to the legal title which had been, previous to the date of the lien, conveyed by him by deed to a third party, but which deed had not been recorded, and of which the creditor, at the date his lien was fixed, did not have actual notice; and further, that this superiority was not affected by the fact that actual

notice of the unrecorded deed may have been given at or before the day of sale.

In the case of Grimes v. Hobson, 46 Tex., 418, the rule is laid down by Mr. Justice Moore in substance as follows: That an unrecorded deed conveying the legal title is void by reason of our registration acts against a creditor who had acquired, in accordance with law, a specific lien or interest in the land in suit by the levy of an execution, and that the creditor, or any one else who might purchase the land at the sheriff's sale, would get a good title as against the unrecorded deed, notwithstanding the purchaser might have had full notice of his legal title when he purchased, provided the *creditor* had no notice prior to the fixing of his lien on the land.

In Wallace v. Campbell, 54 Tex., 90, it is intimated that the rules above laid down as to a purchase by creditors are supported by sound reason, and, if they were not enforced, might often end in the sacrifice of the property and loss of the debt, to the detriment of both creditor and debtor. The lien, however, it must always be borne in mind, in considering these cases and all cases of a like character, prevails over the unrecorded deed, alone by force of and by virtue of the registration laws.

These decisions only apply to cases where the third party to be affected by the unrecorded conveyance acquired thereby the legal title; or where his right or interest is represented by some written instrument, that is required or permitted by law to be recorded, and which he has neglected to record, and of which the judgment creditor had no actual notice at the date of the acquisition of his lien.

This court has never held that the doctrines above announced applied to cases where the rights of a third party, as in this case, for example, claiming through or under the judgment debtor, were purely equitable in their character, and which were not in their nature susceptible of registration, when actual notice of such equitable title was brought home to the purchaser before the sale and purchase.

In Blankenship v. Douglas, 26 Tex., 229, it was stated that a purchaser from J. J. Blankenship, who held the land in question in that case in trust for David Blankenship, without any notice, and for value, would take the estate discharged of the equity of David Blankenship.

In the same case, in remarking on the fact that though David Blankenship's equity was unknown when the judgment lien of the creditor, Mullins, was acquired (as in the case at bar), yet that it was made known to the purchaser before the sale, it was observed

that if the sheriff's sale had been consummated without any such notice to Mullins, or the purchaser, of the equity of David Blankenship, he then would have, perhaps, occupied the position of an ordinary purchaser, and might have taken the land discharged of every claim whatsoever, whether arising under an unrecorded deed, or growing out of some equity that might exist in favor of a third party.

In Grace *v.* Wade, *supra,* this court most cordially approves of the views of the court, as expressed in the case of Blankenship *v.* Douglas, in relation to the protection of equities that by their very nature and character could not be the subject of registration. The court in this connection uses the following strong language: "We also cordially approve and reaffirm the decision in Blankenship *v.* Douglas, to the effect that a judgment lien on land extends to, and binds only, such estate as the debtor has when the lien attaches, except as this doctrine (which is admitted to be the general and correct rule) is qualified by the operation of our registration laws, prescribing the effect of unrecorded conveyances and mortgages upon the rights of creditors and purchasers."

We are of opinion, in accordance with these views, that the vendor's lien, which, as we have said, springs out of the nature and character of the transaction between the parties, and originating and existing wholly independent of any contract of any kind whatever, verbal or written, between the parties, is that character of equitable claim which is beyond the contemplation of our statutes of registration.

As a consequence, putting then, in this case, the effect and operation of the registration laws on unrecorded conveyances out of the question, as in no way controlling the subject matter now in hand, we find that the lien asserted in this case on the land of the debtor, Lambeth, by the attaching and judgment creditor, is subordinate to every equity of this particular character which existed against the land in the hands of the judgment debtor at the time of the rendition of the judgment or the levy of the attachment.

In such a case, where there is actual notice given at the sale, it is said in Blankenship *v.* Douglas, that a court of chancery will protect the equitable rights of third persons against the legal lien, and will limit and confine the operation of the lien of the judgment creditor to the actual interest which the judgment debtor has in the estate at the time the lien is fixed.

In the leading case of Briscoe *v.* Bronaugh, 1 Tex., 333, Judge Wheeler, speaking of the implied lien that always in such cases ex-

ists in favor of the vendor, says: " There is a *natural* equity that the land should stand charged with so much of the purchase money as is not paid, and that, too, without any agreement to that effect. It is founded on an implied trust between the vendor and vendee."

The purchaser is regarded, by a court of equity, as trustee of his vendor, holding for his use until the purchase money is paid. Flanagan *v.* Cushman, 48 Tex., 244.

In the very well considered case of Grace *v.* Wade, above cited, and in which all the previous decisions of the court on this subject are re-examined and reviewed with great care, and in which the case of Price *v.* Cole, 35 Tex., 461, is expressly overruled, the case of Orme *v.* Roberts, 33 Tex., 768, is adverted to and examined closely by the court, and its doctrines seemingly affirmed, or at least not in any manner doubted or questioned.

In that case (Orme *v.* Roberts) it was held that the right set up by virtue of the vendor's lien was superior to that claimed by virtue of the judgment lien. The facts show that the purchaser in that case, though without notice when the judgment lien attached, had actual notice of its existence at the time of purchase.

In commenting on this case in Grace *v.* Wade, this court says, in substance, speaking in reference to the facts in the case of Orme *v.* Roberts: " The court, in its opinion, says that the vendor's lien was not within the registration acts, and hence the other party could not claim under them (the registration laws), and as he purchased *lis pendens,* he could not be protected as a purchaser without notice."

Under the previous decisions of this court, we are therefore of the opinion that the purchaser in this case, having notice at the time of the sale of the appellee's rights, cannot be held to be a purchaser without notice, although he in fact had no actual notice when the lien first attached.

Art. 2318 of the Revised Statutes is referred to, and seems to be relied on. That article is as follows: " A purchaser at sale under execution shall be deemed to be an innocent purchaser without notice in all cases where he would be deemed to be such had the sale been made voluntarily by the defendant in person."

If the appellants had purchased directly from the judgment debtor, with the same notice of the existence of the vendor's lien that they had when they obtained his title at the sheriff's sale, the result of the case under that statute would have been the same.

They are not, under the previous decisions of this court, entitled to protection as innocent purchasers under our registration laws,

because these laws do not apply, as we have seen, to the present case, and hence, in the absence of such application, they hold the property in question subject to the superior equitable lien and demand of appellees.

The judgment is affirmed.

                                                          AFFIRMED.

[Opinion delivered April 17, 1883.]