## H. H. McLane et al. v. D. Sullivan & Co.

### Decided June 4, 1902.

**1.—Vendor's Lien Notes—Assignment to Different Parties—Foreclosure—Judicial Sale—Notice—Innocent Purchaser.**

Where a recorded deed reserved a lien to secure two notes, and the vendor assigned each of the notes to a different person, the assignments being unrecorded, and one of the assignees foreclosed, making the vendor a party, a purchaser at the foreclosure sale who was ignorant of the outstanding note took free of its lien, since the notice conveyed by the deed was merely that the vendor, who was concluded by the decree, had another note.

**2.—Innocent Purchaser—Judicial Sale—Surety.**

Where a surety purchases at a foreclosure sale the land of one who is indebted to his principal and for the purpose of protecting himself against loss from the payment of the principal's debt, he may be an innocent purchaser for value although the money paid by him is credited on the judgment against him and his principal.

Appeal from Bexar. Tried below before Hon. S. J. Brooks.

*James Raley,* for appellant.

*Chas. W. Ogden* and *Terrell & Terrell,* for appellees.

FLY, ASSOCIATE JUSTICE.—This case is before this court on the fol-·
lowing agreed statement of the pleadings and facts:

"Plaintiffs brought this suit to get judgment ·against Taylor McRae as
the maker of a vendor's lien note for $900, and to foreclose the lien on
the land described in the decree as to all the defendants. It is agreed
that on September 18, 1894, D. M. Poor conveyed to Taylor McRae
said land, and received two vendor's lien notes thereon for the sum of
$900 each; first due in two years, or on September 18, 1896, second due
in three years, or on September 18, 1897. The lien was reserved in both
notes and in the deed, and the deed was at once filed for record and re-
corded. On October 6, 1894, D. M. Poor and T. J. McMinn borrowed
$500 of Annie Bee on one year's time, and they and H. H. McLane
signed the note. McLane was only security, and Poor indorsed and
delivered to Annie Bee the No. 1 $900 note as collateral security for the
payment of the $500. This note is as follows: '$500.00 in gold. San
Antonio, Texas, Oct. 6, 1894. Twelve months after date we, or either
of us, promise to pay to the order· of Annie Bee, at the office of Hines
& Bee, San Antonio, Texas, five hundred dollars, for value received,
with interest at 10 per cent per annum after date until paid, interest
due and payable quarterly, and with an attorney's fee of ten per cent
should this note be placed in the hands of an attorney for collection after
maturity. T. J. McMinn. D. M. Poor. H. H. McLane.'

"On the lower part of said note, immediately to the left of the names
signed thereto, was the following indorsement: 'A vendor's lien note,
signed by Taylor McRae, indorsed by D. M. Poor, dated Sept. 18th, 1894,
and due Sept. 18th, 1896, for $900.00, is assigned as collateral security
herefor. Proceeds of collateral to be exhausted before said McLane is
called upon to pay same.' The collateral note for $900 was attached to
and delivered with the $500 note, and was indorsed in blank by D. M.
Poor. The $500 was loaned to McMinn and Poor at the date of the
note. McLane was only surety as stated. Note No. 2 for $900 remained
the property of D. M. Poor until January 30, 1895, when he assigned
and delivered it to the plaintiffs as security on a former debt. No new
consideration passed for the assignment. The assignment of neither one
of the $900 notes.was recorded, and neither Annie Bee, H. H. McLane,
nor either one of the Sullivan partners, knew of the existence or assign-
ment of the other note. The $500 note not having been paid when due,
Annie Bee brought suit in the Thirty-seventh District Court of Bexar
County, Texas, upon it October 9, 1896, against D. M. Poor, T. J.
McMinn, and H. H. McLane, and also made Taylor McRae a party
thereto, and in same suit asked the foreclosure on the property described
in the $900 vendor's lien held by same.

"In due time, all parties having been served, judgment was rendered
finding the amount due from Taylor McRae upon the note for $900 to
be $1159.40, and that same was a vendor's lien upon the land herein
described, and said judgment was further substantially as follows, to wit:
'And it further appearing that the plaintiff's.cause of action against the

defendants, T. J. McMinn, D. M. Poor, and H. H. McLane, is liquidated and proved by an instrument in writing executed by said McMinn, Poor, and McLane, and delivered to plaintiff; that it is due, and that there is now due upon the same the principal sum of $500 and $79.85 interest and $57.90 attorney's fees payable in gold; and it further appearing that the said note executed by said Taylor McRae is attached to the note of defendants McMinn, Poor, and McLane, as collateral therefor, and that the said principal note specifies that the proceeds of such collateral are to be exhausted before said McLane is called upon to pay the same: It is therefore ordered, adjudged, and decreed by the court that Annie Bee, plaintiff, do have and recover of Taylor McRae, defendant, the sum of $1159.40, being the principal, interest, and attorney's fees due upon said note, with interest thereon from this date at the rate of 8 per cent per annum; that the lien as it existed upon the above tracts of land upon the 18th day of September, 1894, be, and the same is hereby, foreclosed; that the clerk of this court do issue an order of sale directed to the sheriff or any constable of Bexar County, commanding him to seize and sell the above described tracts of land as under execution, and that the said officer place the purchaser thereof in possession of such property within thirty days after the day of such sale. It is further ordered, adjudged, and decreed by the court that the proceeds of such a sale be applied, first, to the payment of the costs of such sale; second, to the payment of the costs of this suit; third, to the payment of the attorney's fees specified in said collateral note,—the balance remaining to be applied to the payment of the debt of the defendants, McMinn, Poor, and McLane. Should any amount remain thereafter, such amounts so remaining shall be paid to the defendant D. M. Poor. It is further ordered, adjudged, and decreed by the court that Annie Bee, plaintiff, do have and recover of the defendants, T. J. McMinn, D. M. Poor, and H. H. McLane, the sum of $637.83 in gold, being principal, interest, and attorney's fees due upon said note, with interest thereon from this date at the rate of 10 per cent per annum, together with her costs, and that she have her execution against all the defendants herein; but that no execution issue against the defendant H. H. Lane until after the sale of the property upon which said collateral note is a lien, and the application of the proceeds thereof as herein directed.'

In due time the sheriff of Bexar County, Texas, under such judgment, sold the said land at public vendue, and same was purchased by H. H. McLane for the sum of $160, who paid same to the attorneys for Annie Bee, and it was at once credited on said judgment against McMinn, Poor, and McLane; and at the same time McLane paid the balance due on said judgment, and received a sheriff's deed for the property. McLane knew nothing about the note transferred to Sullivan until a short time before this suit was brought, nor did Sullivan & Co. know anything about the other note, or about the suit thereon, until long after the land had been sold thereunder; but the deed from Poor to McRae, which was duly re-

corded, reserved a lien for both notes.  The pleadings set forth all the foregoing facts, and also set up that the Sullivans were innocent purchasers of the note sued on by them.  McLane pleaded that he was an innocent purchaser of the land.  Both parties prayed for costs, and Sullivan's pleadings asked for the relief granted.  This statement is agreed to and filed under article 1414 of the Revised Statutes for 1895, and the only question is this:  Was McLane such an innocent bona fide purchaser, for a valuable consideration, of the land in controversy, that he has good title thereto to the exclusion of the lien held by the note sued on in this case, or have said notes, under the facts above set forth, equal rights thereon?"

Judgment was rendered in favor of appellees setting aside the sale and canceling the title acquired by McLane thereunder; that the lien of appellees be foreclosed; that the land be sold, and the proceeds applied as follows:  "Half to be paid to the said H. H. McLane, and the other half to be applied to the payment of this judgment against Taylor McRae; and, if said property shall sell for such an amount that one-half thereof, after paying costs, shall be more than sufficient to pay off this judgment, then the balance of said half, after paying said judgment, shall be paid to the said Taylor McRae.  But, if same shall not sell for an amount such that one-half thereof, after paying costs, shall pay off this judgment, then for the collection of the remainder of this judgment, after said one-half has been so applied, let execution issue against said Taylor McRae."

There was no record of the assignment of the note by Poor to appellees, and it is agreed that at the time appellant bought the land at sheriff's sale he had no notice of the transfer of the note to appellees.  The record of the deed from Poor to McRae put him on notice of the existence of another note held by Poor, and when Poor was made a party to the suit by Annie Bee, and his rights adjudicated, all was done that could be required by the notice in the deed.  He was placed in the same position by the deed given him by the sheriff that he would have occupied if he had paid off the note due Annie Bee and had obtained a release of his interest in the land from Poor.  Can it be doubted, if he had done this, that he would have obtained title to the land?  We think not.  In the case of Rogers v. Houston, 94 Texas, 403, 60 Southwestern Reporter, 869, the facts were substantially as follows:  Dailey conveyed to Brown 40 acres of land, reserving a vendor's lien to secure a purchase-money note for $67.20.  Afterwards Brown, the vendee, conveyed the land to Davis, who assumed payment of the above-described note, and gave his note to Brown for $180, the lien being reserved to secure its payment.  The note given by Brown to Daily was assigned to Armstrong, who brought suit on it, and on the promise made in the deed by Davis to pay it, against Brown and Davis.  When this suit was instituted, the note for $180 given by Davis to Brown had been assigned to Young, who had assigned it to Houston.  Neither Houston nor Young were parties to the suit of Armstrong against Brown and Davis, and had no notice of the suit until after

the lien had been foreclosed, and the land sold to Rogers. Houston, as holder of the note given by Davis to Brown, sued Rogers, Davis, Brown and Young, in which suit he sought judgment against Davis as maker and Young as indorser, with foreclosure of his lien, offering, so far as Rogers was concerned, to redeem, and do equity.

The court held: "Rogers had the right to rely upon the record, and was not required to institute search for the note, which appeared to belong to a party to the judgment under which he bought. By his purchase Rogers acquired the legal title to the land, and before plaintiff could assert his equitable right to redeem he must show that Rogers had notice of the right, or that he knew such facts as would put him upon inquiry." The case of Douglass v. Blount, 95 Texas, 369, does not antagonize the doctrine of Rogers v. Houston, because in that suit Fortescue, the vendor, and presumptive holder of the note, was not made a party to the foreclosure proceedings on one of the purchase money notes, and the question of notice was not involved.

The judgment of the lower court, in so far as it affects appellant and the land bought by him, is reversed, and judgment here rendered that appellees take nothing as to appellant, and that he have judgment for all costs of this and the lower court.

### ON MOTION FOR REHEARING.

McRae gave two notes to Poor for the purchase money on the land in controversy. Poor and McMinn borrowed money from Annie Bee, and to secure its payment gave their note, with McLane as surety, and, as additional security, one of the notes given by McRae to Poor was transferred to Annie Bee, who, when the note given by Poor, McMinn, and McLane became due, instituted suit on the note and collateral against the makers of the same. The lien reserved by Poor against McRae was foreclosed, and the property was sold under the judgment, McLane being the purchaser. He paid the whole of the indebtedness to Annie Bee. The question arises, is McLane, under the circumstances of this case, an innocent purchaser for value of the land? It is admitted that he had no notice that Poor had transferred the other vendor's lien note to appellees, or any one else, and, if he was not an innocent purchaser, it must be because he was a surety on the debt to Annie Bee, and that the money that he paid for the land was credited on that debt. It is well settled that a creditor who buys at his own execution sale and credits the amount of his bid upon his judgment is not a purchaser for a valuable consideration. Ayres v. Duprey, 27 Texas, 606, 86 Am. Dec., 657; Delespine v. Campbell, 52 Texas, 4; McKamey v. Thorp, 61 Texas, 648; Barnet v Vincent, 69 Texas, 685, 7 S. W. Rep., 525, 5 Am. St. Rep., 98. Under the facts of this case appellant was not a purchaser at his own execution sale, and the amount of his bid was not credited on a pre-existing debt held by him. On the other hand, he paid out his money,

and did not receive any sum to credit on anything. It is true that he was a surety on the debt due by Poor to Annie Bee, but that fact could not affect his position as a bona fide purchaser of property belonging to McRae. He paid his money for the land as anyone else would have done, and, having done so without notice, it seems to us he is protected as anyone else would have been.

As stated in our former opinion, if appellant would have been protected in his title had he paid off Poor's note and had bought his and McRae's title, he will be protected in buying at the sheriff's sale. Rev. Stats., art. 2378; Holmes v. Buckner, 67 Texas, 107, 2 S. W. Rep., 452. It can not be doubted that, under the circumstances surrounding this case, Poor and McRae could have made a valid title to the land to appellant, and he got the same title through the sheriff's sale. In the case of Wallace v. Campbell, 54 Texas, 87, it was held that a creditor who purchases under an antecedent lien may be an innocent purchaser, although the amount of his bid is credited on a debt. That case has been explained and distinguished until it is not clear what is left of it. Senter v. Lambeth, 59 Texas, 259; Bailey v. Tindall, 59 Texas, 540; McKamey v. Thorp, 61 Texas, 648. It is settled, however, that the reason for holding that a creditor who places the amount of the purchase money as a credit on a pre-existing debt can not be an innocent purchaser for value is that he devests himself of no right, and places himself in no worse position by making the purchase. He has advanced nothing on the faith of his purchase, and loses nothing by a failure of the title. But where a valid security, such as a mortgage or judgment lien, is surrendered, the purchase becomes bona fide. In this case Annie Bee was the holder of a mortgage and judgment lien on the property of McRae, and, had she purchased at the execution sale, would have been an innocent purchaser, and upon that ground the decision of this court could be sustained. The rule that is invoked by appellees is confined to instances where the bid for land sold under execution is made by the judgment creditor and is credited on the judgment; and many States—among the number being California, Wisconsin, Missouri, Massachusetts, Maryland, Indiana and Michigan—have repudiated the doctrine even as applied to the judgment creditor. No case has been cited, or has come to our notice, that would extend the rule to a surety who buys the land of a party indebted to his principal at a sale made by the creditor, the purchase being made to protect himself against loss from the payment of the principal's debt. The tendency of the courts, it has been said, is towards the repudiation of the doctrine, rather than towards enlarging its scope. Freem. on Ex., sec. 344. The property sold was that of McRae, and the sale was made under an execution issued by virtue of a judgment rendered for a debt with which McLane had no connection. He stood in the same relation to it that any other person would, and his rights as an innocent purchaser could not be jeopardized by the fact that he was a surety for a debt due by D. M. Poor. The contention of appellees when laid bare,

is that because McLane was a surety on a debt due by Poor he could not be a purchaser in good faith, for value, at a sale of the property of a person indebted to Poor. The contention can not be sustained. None of the authorities cited by appellees sustain their position.

The motion for a rehearing is overruled.

*Overruled.*

Writ of error granted and judgment affirmed.