McLAIN v. GUINN et al.   (No. 11903.)

Court of Civil Appeals of Texas.   Fort Worth.
Jan. 28, 1928.

1. **Vendor and purchaser** ⊚⟹254(1)—**Generally, where price for land has not been paid, lien to secure unpaid price is implied regardless of whether lien was reserved.**

Generally, where purchase money for land has not been paid, lien to secure payment thereof is implied regardless of fact that deed or notes given for price failed to reserve lien.

2. **Vendor and purchaser** ⊚⟹266(1)—**Lien to secure unpaid price of land may be waived.**

Lien to secure unpaid purchase price of land may be waived.

3. **Appeal and error** ⊚⟹1012(1)—**Weight and sufficiency of evidence is for trial court.**

Weight to be given to testimony and its sufficiency is for jury or trial court.

4. **Appeal and error** ⊚⟹1001(1)—**Judgment should be affirmed where evidence interpreted in light most favorable to successful party reasonably supports it.**

Where evidence interpreted in light most favorable to successful party is reasonably sufficient to support judgment, judgment should be affirmed.

5. **Vendor and purchaser** ⊚⟹281(3)—**Evidence held to sustain finding that no vendor's lien was retained when lot was sold.**

In action to recover on a note given as part of price of lot and to foreclose a vendor's lien on the lot, evidence *held* to sustain finding of trial court that no vendor's lien was reserved, fact that purchaser of lot witnessed signature of maker of note given in payment only repelling presumption, under Rev. St. 1925, art. 5934, § 35, that by signing note he became liable thereon.

Appeal from District Court, Knox County; J. H. Milam, Judge.

Suit by J. H. McLain against Ben I. Guinn and others to recover on a note and for foreclosure of a vendor's lien. From a judgment for plaintiff against defendant John H. Klepper on the note, but denying right to foreclose the vendor's lien, plaintiff appeals. Affirmed.

Jas. A. Stephens and D. J. Brookreson, both of Benjamin, for appellant.

M. F. Billingsley and J. S. Kendall, both of Munday, for appellees.

CONNER, C. J.   This suit was instituted by the appellant, J. H. McLain, against Ben I. Guinn, John H. Klepper, C. A. Eiland, D. B. Barnes, and J. A. Corbitt, to recover upon a promissory note in the sum of $400, of which $50 had been paid. Said note was executed by John H. Klepper and was alleged to have been given as part of the purchase money for the south half of lot 9, block 1, in the town of West Munday, Knox county.

The plaintiff prayed for judgment for the amount of the note with its interest, attorneys' fees, costs of suit, and specially for a foreclosure of a vendor's lien upon the lot mentioned.

The defendants appeared and answered by a general denial and specially to the effect that the lien asserted by the plaintiff, if any, had been waived.

The trial was before the court without a jury, and resulted in a judgment for the plaintiff against John H. Klepper alone for the amount due upon the note, and in favor of all defendants on the issue of the lien. From the judgment so rendered, plaintiff, McLain, duly excepted and prosecutes this appeal.

The sole question presented for our determination is whether or not the evidence is sufficient to support the court's judgment. In determining the question it follows that we should state the evidence. In substance, the undisputed testimony is that on the 12th day of March, 1926, W. T. Lewis was the owner of the south half of lot 9, block 1, in the town of West Munday, Knox county. On that day Lewis, joined by his wife, by regular warranty deed, conveyed said south half lot to Ben I. Guinn, one of the appellees in this case. The deed recited a consideration of $1,000 paid, and was without reservation of a lien to secure the payment of any unpaid purchase money. The testimony further shows that at the time of this transaction W. L. Lewis was indebted to the plaintiff in this case in the sum of $400, and that John H. Klepper was indebted to Ben I. Guinn in the sum of $600, for which he had given a promissory note. At the time of Guinn's purchase of the half lot, he in fact did not pay $1,000 in money as recited in the deed, but, as hereinafter more particularly disclosed, in lieu thereof gave to Lewis the Klepper note, some furniture, merchandise, and a small amount of money. In conference and by agreement among Guinn, Lewis, and Klepper, the Klepper note was substituted by three promissory notes executed by Klepper and made, one payable to J. H. McLain in the sum of $400, one payable to James A. Stephens, not a party to this suit, in the sum of $100, and one payable to Lewis in the sum of $200. It is upon the $400 note made payable to J. H. McLain that the suit was instituted. The note to McLain by Klepper contained no grant or contract for a lien upon the one-half lot in controversy to secure its payment. After these transactions, however, to wit, on May 22, 1926, Lewis executed an assignment to McLain of the "purchase lien owned and held by me (Lewis) against said premises (said one-half lot) by virtue of the laws reserving purchase-money liens for lands.   *   *   *"

W. T. Lewis, the grantor in the deed to Guinn was called as a witness for plaintiff.

He testified, among other things, that at the time of the conveyance to Guinn—

"There was nothing said by any of the parties to the transaction about waiving any lien on this property. In fact, it was not mentioned by them to me, or I to them. Prior to this time I was indebted to Mr. McLain, and he and I went into Mr. Kendall's office, and requested Mr. Kendall to draw up a deed of trust on this property to secure that debt, and after that, I delivered to Mr. McLain the note you showed me, and soon thereafter I executed a transfer of this lien to take the place of that deed of trust. The reason I wanted to execute the deed of trust, I really wanted to sell the place and pay up what I owed, and have the rest for myself. Ben I. Guinn held a note of Klepper which I taken in on the place as part payment for it, and also settled with Mr. McLain. Ben already had a note of Klepper's. I took up the Klepper note and had it made out again, part of it to me and part of it to Mr. McLain. That note has not been paid."

Ben I. Guinn testified in behalf of the defendants on direct examination as follows:

"My name is Ben I. Guinn. I am the grantee in a deed made by W. T. Lewis, conveying the S. ½ of lot 9, block 1, of original town of West Munday. I think the consideration for that property was $1,000. This was paid some money, some furniture, household goods, and one thing and another, and some notes. Mr. Lewis come over there to the store and wanted to trade me the place at first. I had a note of John Klepper's, and Mr. Lewis wanted some stuff, some furniture, and first one thing, and another—in fact, we were trying to trade for two or three days before we did finally trade. I finally made a trade with him, I gave him the note of John Klepper, and the stuff he wanted, and some money—I don't know just how much money now, but not very much—but he got the note on Klepper I already had. There was no particular conversation had between us with reference to the Klepper note, except that I talked with John and he agreed to pay $50 per month. I could not say whether Mr. Lewis was present at the time I talked with Klepper about paying the $50 a month or not, but I rather think he was—I am sure he was. There was nothing said about any lien on the place further than Mr. Lewis said the place was clear; he told me it was absolutely clear. There was nothing said between he and I with reference to his having any lien on the property he was selling to me. He and I agreed upon the value of the notes, and they were set out in the deed as cash consideration.

"There were three new notes made for the original note I believe, one of which was made payable to Mr. McLain, and one to Mr. Lewis and one to you, and all of the notes were signed by John H. Klepper, and were given in part payment for the lots. These three notes represented the amount that John Klepper owed me. Mr. Lewis explained to me that he owed Mr. McLain, and wanted to split the note up into three notes, so they were just made out direct to McLain, to you, and to Mr. Lewis in lieu of the original note of Klepper's I surrendered to him. These three notes took the place of money, and were given for an old note that John Klepper owed me, which, at Mr. Lewis' request,

it was split up in three ways. I did not know at that time that John Klepper could not pay anything. He had a good shop, and was doing a good business then. It was his shop he was working in. These three notes, $400, $100 and $200, they were executed in payment of an indebtedness that Klepper owed me, and Mr. Lewis was to take up that debt.

"At Mr. Lewis' request, Klepper made out new notes in lieu of the note I had of his, which went in on the purchase of this property. Lewis took up the Klepper debt in payment, or part payment for this property, so when Klepper signed the new notes, they were made payable to the parties direct, and when this was done, I credited his account and settled it off, and in making these new notes, they were made direct to you, and Mr. McLain, and Lewis, and these notes were given in exchange for a note I had of Klepper's which was a part of the purchase price of this lot. Yes; we had agreed on the price of the note, and for convenience they were made direct instead of my indorsing the other note. I was to pay Lewis originally a $1,000 for the place, which was taken up in furniture, the indebtedness of Klepper to me and some money. Lewis was to take the Klepper debt. At the time we began negotiations, John H. Klepper owed me the amount of the three notes, but it was all in one amount. This was divided up at the request of Mr. Lewis."

[1, 2] The trial court filed no findings of fact and conclusions of law, nor does the judgment disclose whether the trial court concluded that the note declared upon by appellant was in fact not the note given by Guinn to Lewis as part of the purchase money for the lot, or whether, regardless of that contention of appellant, the lien had been waived. Appellant stresses the proposition that where it appears that the purchase money for land has not been paid, that the law implies a lien to secure the payment of all unpaid money, regardless of the fact that the deed of conveyance or notes given as part of the purchase money fails to reserve a lien. Generally speaking, this contention is undoubtedly true with us. In an early day it was ruled by our Supreme Court in the case of Briscoe v. Bronaugh, 1 Tex. 326, 327, 46 Am. Dec. 108, that it is a doctrine of the civil law and of the equity jurisprudence of the United States and of England that a vendor has a lien upon the thing sold for the purchase money, without any special agreement for that purpose; that the vendee holds in trust for the vendor until the purchase money is paid; and that this trust attaches to the land or thing sold, and follows it into the hands of subsequent purchasers with notice. The rule so indicated has been frequently followed by our courts since the decision cited. White, Smith & Baldwin v. Downs, 40 Tex. 226; Irvin v. Garner, 50 Tex. 50; Senter & Co. v. Lambeth, 59 Tex. 264; Burford v. Rosenfield, 37 Tex. 42. Nevertheless the lien may be waived. See Parker County v. Sewell, 24 Tex. 238; Weeks v. Barton (Tex. Civ. App.) 31 S. W. 1071; Wasson

v. Davis, 34 Tex. 159; Faver v. Robinson, 46 Tex. 204; Cresap v. Manor, 63 Tex. 485.

In the case of Parker County v. Sewell, Parker county sued J. H. Sewell, John H. Prince, and G. K. Elkin to recover the amount of a note given by them to the plaintiff, as the consideration for the purchase by Sewell of certain town lots belonging to said county, and to enforce the vendor's lien on the lots, which the plaintiff claimed to arise by virtue of the sale. Prince and Elkin executed the note as sureties of Sewell. Isaac Anderson, and others not necessary to name, intervened and claimed the lots as innocent purchasers from Sewell, and resisted the application of the plaintiff to enforce the vendor's lien, on the ground that it had waived its lien by taking independent, personal security, namely, the joint makers with Sewell of the note sued on. The court, after affirming the general doctrine that the vendor of land retains a lien upon it for the unpaid purchase money which would be enforced against the vendee and those claiming under him with notice that the purchase money remains unpaid, held, after reviewing the authorities, that the taking of a distinct and independent security by the vendor of real estate, where it does not appear that he reposed as well upon his lien as upon such security, will be considered a waiver of the lien. In the course of discussion, the court quoted the following from Chancellor Kent:

"Taking a note, bill or bond, with distinct security, or taking distinct security exclusively by itself, either in the shape of real or personal property, from the vendee, or taking the responsibility of a third person, is evidence that the seller did not repose upon the lien, but upon independent security, and it discharges the lien."

In the case of Weeks v. Barton, supra, this court held, quoting from the headnote:

"Where a note does not show that it was given for the price of land, and declares that it is secured by rent on other property, and the deed conveying the land recites a cash consideration and reserves no lien, in an action to foreclose his lien, the burden is on the vendor to show that a lien on the land was reserved."

In the case of Faver v. Robinson, supra, our Supreme Court held that a petition which merely alleged that the joint and several promissory notes of the vendee and two others on a lot had been given for the amount which the vendee was to pay for the lot was insufficient to support a judgment enforcing a lien, citing the case of Parker County v. Sewell, 24 Tex. 238, with approval.

In the case of Cresap v. Manor, supra, it appears that Manor sold land to Cresap, taking in payment $15 in cash and two promissory notes, each executed to Cresap by one Gossett for the purchase money of a tract of land sold to Gossett. These notes were indorsed by Cresap, and they, together with the $15 paid in money, formed, as the deed recites, the consideration for the land. The notes made to Cresap by Gossett were secured by lien on lands sold by Cresap to Gossett. Chief Justice Willie, in disposing of the case, said:

"The presumption of law, therefore, was that the vendor's lien was waived; and if Manor relied upon it, in addition to the other securities held by him, the burden was upon him to establish that fact by appropriate evidence."

It was further said in that case that:

"It is the settled law of this state that the taking of a distinct and independent security by a vendor of real estate, where it does not appear that he reposed as well upon his lien as upon such security, will be considered as a waiver of the vendor's lien. Parker County v. Sewell, 24 Tex. 238; Faver v. Robinson, 46 Tex. 204; Ellis v. Singletary, 45 Tex. 27."

[3, 4] There were no objections to the evidence, and the rule by which we must be guided is that in the first instance the weight to be given to the testimony and its sufficiency is for the jury or trial court, as the case may be, and that where the evidence, interpreted in the light most favorable to the successful party, is reasonably sufficient to support the judgment, the judgment should be affirmed. Wright's Adm'x v. Donnell, 34 Tex. 291; Boettler v. Tumlinson (Tex. Civ. App.) 77 S. W. 824, writ refused.

[5] According to the rule so stated, we have felt unable to say, as appellant insists, that the evidence fails to support the court's judgment denying the vendor's lien upon which appellant declared. By a review of the testimony it will be seen there was no express reservation of the lien and the deed recited the consideration as paid, and that at the time of the conveyance by Lewis and wife to Guinn nothing was said about a lien; that the notes to McLain, Stephens and Lewis "were given in exchange for a note he (Guinn) had of Klepper's, which was a part of the purchase price of this lot." Guinn refers to the transaction as a trade between him and Lewis, and testified that at the time Klepper had a "good shop and was doing a good business then. It was his shop he was working in." The Klepper note was property subject to valuation and assignment, as truly so as the furniture and household goods, and we know of no reason why, Guinn and Lewis so agreeing, it might not be treated as cash.

There is nothing in the testimony that we have been able to find that shows that Klepper was insolvent at the time. Guinn, upon the completion of the transaction, canceled his debt against Klepper. Lewis, by the transaction, seems to have discharged the debt he owed to McLain, and he now has the judgment of the court against Klepper on the note received by him as a discharge of the McLain debt. No judgment was obtained by appellant against Guinn or Lewis, and

124      **4 SOUTH WESTERN REPORTER, 2d SERIES**      (Tex.

of this no complaint is made, or any evidence that Guinn by indorsement or otherwise was considered as liable upon the Klepper note. It is true his name appears upon the Klepper note for $400 sued upon, but it was merely as a "witness to the signature," thus repelling any presumption that he became liable thereon. Article 5934, § 35, Revised Statutes of 1925. The judgment against Klepper was by default, he having failed to appear, as the judgment recites; but, as stated, there is no evidence of probative effect that he is insolvent.

The trial court had the witnesses before him, doubtless knew the parties, heard all the evidence, and we think he was justified in concluding that the lien had been waived. It is true that, as appellant urges, some days after the trade Mr. Lewis executed an instrument purporting to convey the lien held by him on the lot in question; but neither Guinn nor Klepper is shown to have been a party to this instrument, or to have consented thereto, and we cannot think that it can be given the effect insisted upon. It is also true that the note given by Klepper to appellant contains recitations indicating that a lien was held upon property conveyed, but the nature of the recitations are such as to indicate that the property referred to was personal property but, even if not so, there was no description of either personal or real property contained in the note, and hence in no event can it be said to have conferred a lien upon anything. Rosen v. Phelps (Tex. Civ. App.) 160 S. W. 105; Penn v. Yellow Pine Lumber Co., 35 Tex. Civ. App. 181, 79 S. W. 842; Continental Supply Co. v. M., K. & T. Ry. Co. (Tex. Com. App.) 268 S. W. 444; Id. (Tex. Com. App.) 269 S. W. 1040.

We conclude that the judgment below must be affirmed.